**UNITED STATES of America, Plaintiff,**

v.

**Brian WEGG, Defendant.**

**Criminal A. No. 4:94cr80.**

United States District Court,
E.D. Virginia,
Newport News Division.

March 12, 1996.

Sydney K.L. West, Horne, West & McMurtie, Glowcester, VA, for plaintiff.

Arenda L. Wright–Allen, U.S. Atty.'s Office, Norfolk, VA., for defendant.

*OPINION AND ORDER*

DOUMAR, District Judge.

Defendant has been convicted in a jury trial of twenty-five counts of aiding and abetting the making of a false statement to a licensed firearms dealer in violation of 18 U.S.C. §§ 2 and 924(a)(1)(A), and four counts of conspiracy to make false statements to a licensed firearms dealer in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A). The matter is before the Court for defendant's sentencing pursuant to his conviction. The defendant was indicted, tried and verdicts rendered as if these charges were all felonies. Under the circumstances of this case, this Court has determined that the sentences, and therefore the convictions, must be misdemeanors and not felonies for the reasons set forth below.

## I. *Facts and Procedural History*

"Straw purchases" occur when an individual purchases a firearm for another but fills out the paperwork for himself or herself. The paperwork, usually the Bureau of Alcohol, Tobacco and Firearms (BATF) Form 4473, requires the purchaser to state that they are eligible to purchase, i.e., they live in the state, are not a convicted or indicted felon, do not use or sell illegal narcotics, that they have no mental illness, that they are not a fugitive from justice, that they have not had a dishonorable discharge from the armed forces, etc. The licensed dealer (transferor) must then see and record the identification of the purchaser (transferee), record the number and type of any firearms purchased, and sign the same form, attesting to the lawfulness of the transaction. The back of the BATF form states that "the transferor (seller) of a firearm is responsible for determin-

ing the lawfulness of the transaction and for keeping proper records of the transaction." It is clear that the straw purchase can occur with or without the knowing complicity of the licensed dealer.

At trial in Newport News, Virginia, the government attempted to prove the existence of four conspiracies to commit firearms "straw purchases" by producing the actual purchasers of the weapons, who were immunized by the government. These purchasers testified that they were buying guns for other individuals, and the government presented circumstantial evidence that defendant, who was a licensed firearms dealer selling firearms out of his home in Newport News, knew that the individuals signing the forms were not the intended recipients of the weapons. The government showed that purchasers came into defendant's home various times in four separate groups, thus the need for multiple conspiracy counts. The typical group consisted of one or two females who acted as the straw purchasers, and at least one male for whom the firearms were intended.

The first time that many of these purchasing groups entered defendant's home, the buyers attempted to keep their arrangement concealed from defendant by identifying the firearms prior to entering the house, and passing money to each other under the table. At subsequent transactions, however, based upon the purchasers' belief that defendant knew what they were doing and did not object, the purchasers utilized fewer and fewer of the precautions and ultimately all pretense was lost in the presence of the defendant. For example, one witness testified that she, a very pregnant female, sat on the sofa and watched television while her male friend handled and picked out the firearms he wanted to buy, and discussed with defendant matters incident to the sale such as price and ammunition. When the bargaining ended, defendant brought the federal and state forms to the pregnant woman, asked for her identification and signature, and verified her lack of a criminal record with a call to the appropriate agency. Except for the fact that the firearms were not intended for the individual signing the forms, the pur-

chases would appear wholly legal; thus the term "straw purchase" or "straw transaction."

In total, well over fifty firearms were sold to individuals in illegal transactions. The government did not attempt to prove, nor was it required that the government show, that the intended purchasers of the weapons in the straw purchasers were somehow ineligible to purchase on their own, e.g., mentally ill, a convicted felon, a fugitive from justice, dishonorably discharged from military service. At least some of these firearms, however, came into the possession of different law enforcement agencies after having turned up in connection to varying illegal activities.

In four other counts of the indictment, numbers 33–36, the government also alleged that defendant aided and abetted the making of a false statement to a federally licensed firearms dealer in relation to four separate purchases of firearms by an out-of-state resident.

After the government closed its evidence, defendant moved for judgment of acquittal on all counts. The Court found that there was insufficient evidence to prove defendant's knowledge of the straw purchases on two counts. That is, the Court acquitted the defendant as a matter of law on Count 7, where the government's witness actually denied having signed the particular BATF form. The Court also acquitted defendant as a matter of law on Count 10, which was the first purchase by a member of the third overall conspiracy. The Court found that the evidence was insufficient to establish the fact the defendant knew that this particular transaction was illegal when it occurred, given the testimony by the government's witness that during this transaction she and her male counterpart engaged in such pretense that would have made it unlikely, as a matter of law, that defendant knew at that time of the impropriety of the particular transaction.

Defendant then presented a number of witnesses, including friends, a customer whom he had turned away for improper identification, and his mother, and also testified on his own behalf. He denied knowing that the people who were buying the weapons

were not the intended purchasers, though stating that at different times he may have been "suspicious." The government did not dispute defendant's statement that he voluntarily ceased his business before any criminal investigation began, and during the government's investigation, defendant also presented the government with all of the records of his short-lived business without the issuance of a subpoena. Defendant appeared an intelligent and capable young man, but one who in this instance twisted the law to suit his convenience and make a profit. The jury agreed with the Court view of the evidence, and returned a verdict of guilty as to all counts presented it, except for counts 11 and 33–36.[1]

After the verdict, the Court raised the prospect that the defendant's acts might not be punishable as felonies but rather as misdemeanors. The Court ordered the parties to brief the subject prior to the preparation of the presentence report.

## II. *Appropriate Punishment*

A close analysis of the statute and cases requires this Court to hold that licensed dealers cannot be prosecuted *as principals* under the felony provisions for record-keeping violations such as defendant's. Here, however, defendant was prosecuted not as a principal but rather as an accomplice and co-conspirator, and as the government's brief states, 18 U.S.C. § 2 applies to the entire criminal code. The government further argues that defendant "just so happened" to be a licensed dealer, which should not shield him from felony liability. However Wegg was the dealer whose records were being falsified.

Case law suggests that reading the legislative history, which shows that the statute was amended in 1986 to reduce licensed dealers' record-keeping violations to misdemeanors, accomplice and co-conspirator liability should not be imposed under the felony provision where such would defeat the clear purpose of the 1986 amendments. Congress intended that defendant's status as a licensed dealer shield him from felony punishment. Despite the visceral appeal of the government's argument, it is not this Court's proper duty to question the wisdom of this statutory scheme.

Defendant's acts, allowing the transactions to proceed knowing they were illegal, fall within the specific record-keeping provision applicable only to dealers, as well as within the general aiding and abetting statute when put in combination with the general record-keeping provision. Based mostly on the legislative history but also with support in the cases, the Court believes defendant's convictions for aiding and abetting must be punished under the misdemeanor provisions applicable to licensed dealers, and not the general felony provision which does not apply to dealers (but would according to the government through the aiding and abetting statute), and the Court so ruled at defendant's sentencing hearing.

As to the conspiracy charges, similar logic applies. If a conspiracy charge may only draw as much punishment as if defendant had been a principal and committed the acts conspired to, then defendant may only be punished as if he has committed the crime as a principal. The statute clearly imposes misdemeanor liability on licensed dealers as principals, therefore all charges must be construed as misdemeanors where the licensed dealer is the individual in the straw purchase responsible for determining the lawfulness of the transaction and maintaining the appropriate records.[2]

### A. *18 U.S.C. § 924*

■ Any analysis of the present issue must begin with the statutory language. The firearms statute contains numerous pro-

---

1. The acquittal on Count 11 is likely due to the same concerns that prompted the Court to acquit defendant on Count 10: the pretenses had not been so completely abandoned that it was obvious that defendant knew the transactions were illegal. On Counts 33–36, the purchaser was a member of the armed forces who resided out-of-state, but presented defendant with a transfer order that implied a residence in the Commonwealth of Virginia. The jury likely also believed that the government failed to prove defendant's knowledge of the purchaser's actual residence.

2. This opinion expresses no opinion as to whether a licensed dealer is involved in a straw purchase transaction in any capacity other than the seller of the firearm.

visions which may apply to straw purchases. Sections 922(b)(3) and (5) of Title 18 are two examples. Section (b)(3) prohibits licensed dealers from selling to anyone who does not reside in-state, and section (b)(5) requires licensed dealers to record certain information such as name, age and place of residence of the purchaser of a firearm. 18 U.S.C. § 922(b)(3), (5).

Section 922(m) of Title 18 has similarly been utilized in prosecuting a licensed dealer for his involvement in a straw purchase. *E.g., United States v. Cha,* 837 F.2d 392, 393 (9th Cir.1988). Almost redundant with the provisions of § 922(b), § 922(m) states that "[i]t shall be unlawful for any licensed ... dealer ... knowingly to make any false entry in, to fail to make an appropriate entry in, or fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder." 18 U.S.C. § 922(m). In addition, § 922(a)(6) makes it a crime to knowingly make a false statement or representation in connection with the acquisition of a firearm or ammunition. 18 U.S.C. § 922(a)(6); *United States v. Robinson,* 898 F.2d 1111, 1113 (6th Cir.1990) (appeal of conviction where charges included aiding and abetting the making of a false statement to a firearms dealer in violation of 18 U.S.C. § 922(a)(6)).

These provisions, like most of section 922, have no penalty provision. *United States v. Percival,* 727 F.Supp. 1015, 1016 (E.D.Va. 1990) (Cacheris, C.J.), *aff'd* 932 F.2d 964 (Table) (4th Cir.) (unpublished), *cert. denied,* 502 U.S. 919, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991); *Robinson,* 898 F.2d at 1113. Furthermore intended transferees are generally prosecuted as aiders and abettors of the commission of the straw purchase, as they usually cause the illegal sale to satisfy their need for firearms. *Id.* (appeal of conviction where charges included aiding and abetting the making of a false statement to a firearms dealer in violation of 18 U.S.C. § 922(a)(6)). Thus regardless of the defendant's position in the transaction, courts must look to § 924, the penalty provision for the firearms statutes, to determine the appropriate punishment.

Section 924 also provides, in § 924(a)(1)(A) and (a)(3)(A), substantive criminal statutes. *United States v. Howell,* 37 F.3d 1197, 1200 n. 4 (7th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 1810, 131 L.Ed.2d 735 (1995); *United States v. Buck,* 548 F.2d 871, 876–77 (9th Cir.), *cert. denied,* 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175 (1977). Straw purchases are often prosecuted under 18 U.S.C. § 924(a)(1)(A), separate from any provision under § 922. *E.g., Id.* at 1201–02. Section 924(a)(1) provides:

> (a)(1) Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—
>
> (A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;
>
> ...;
>
> shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1). A misrepresentation as to whom the intended transferee actually is by the straw purchaser, the classic straw purchase, falls within this language. *E.g., Howell,* 37 F.3d at 1202.

Section 924 treats licensed dealers who do the same exact thing, however, differently. Section 924(a)(3) is one of the exceptions to the general provision of § 924(a)(1) quoted above, and states the following:

> (3) Any licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly—
>
> (A) makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or
>
> (B) violates subsection (m) of section 922,
>
> shall be fined under this title, imprisoned not more than one year, or both.

18 U.S.C. § 924(a)(3). This section was added as part of the Firearm Owners' Protection Act of 1986, Pub.L. No 99–308, 100 Stat. 449

(1986). This provision similarly criminalizes a licensed dealer's knowing acceptance of the BATF form completed by the straw purchaser (and signature on the BATF form itself) as a record-keeping violation, but provides only for a misdemeanor penalty. Through § 924(a)(3)(B), a licensed-dealer's involvement in a straw purchase prosecuted under § 922(m) similarly results in a misdemeanor penalty.

It is axiomatic that where a statute describes an offense generally and attributes felony punishment to all violators except for an excepted group who may only receive misdemeanor punishment, those in the excepted group may only be prosecuted for the misdemeanor. Under a literal reading of § 924, then, when record-keeping offenses concerning their own records are at issue, licensed dealers may only be prosecuted for a misdemeanor. For example, in *United States v. Hunter*, 843 F.Supp. 235 (E.D.Mich. 1994) the district court held that the conspiracy count of the indictment improperly charged defendants with conspiracy to commit a felony where the licensed gun dealers failed to properly maintain their records. *Id.* at 253–54. The Court allowed the government to amend the indictment and to prosecute these gun dealers, but only under the misdemeanor provision in § 924(a)(3). *Id.*

■ The government cannot avoid the direct application of § 924(a)(3) by attempting to use a different provision in the same statute to punish the same behavior. While straw purchasers and intended purchasers of firearms who engage in the straw purchase may be liable for felony convictions, licensed dealers engaged in the same straw purchase may only be guilty of a misdemeanor. Why else would Congress have had nearly identical language under § 924(a)(1)(A) and (a)(3)(A)? Although such a distinction may seem unfair or illogical and counter-productive, this Court has previously recognized the distinction.

Moreover, looking at the firearms statute, the purchase of firearms through "straw purchases" could conceivably be charged under numerous provisions: sections 922(a)(6) (*Robinson*, 898 F.2d at 1113); 922(b)(3) and (b)(5) (*Percival*, 727 F.Supp. at 1016); 922(m)

(*Cha*, 837 F.2d at 393); 924(a)(1)(A) (*Howell*, 37 F.3d at 1201), and 924(a)(3)(A). The question then is whether a prosecution of a licensed dealer may utilize those provisions in § 922 (other than § 922(m)), where the penalty provision in § 924 would appear to apply felony punishment.

**B. *Percival***

In *United States v. Percival*, a licensed dealer and an employee were prosecuted under 18 U.S.C. § 922(b)(3) and (b)(5) for failing to keep proper records in connection with straw purchases identical to the ones at issue in the present case. 727 F.Supp. at 1016. As outlined above, sections 922(b)(3) and (5), like 922(m), contain no penalty provision, so the *Percival* Court was directed to § 924. The Court first stated that the language of the statute appeared to require, as noted above, that licensed gun dealers were excepted from the general felony provision of § 924(a)(1)(A) with respect to record-keeping violations. The Court ultimately held that § 924(a)(3), the misdemeanor provision, applied. *Id.* at 1017.

The government made two arguments in *Percival* which the Court ultimately rejected. The government first argued that because defendant was charged with a "willful" violation under § 924(a)(1)(D) and 922(b)(5) and the jury was so instructed, the felony provision should apply. This was rejected by the Court as contrary to the express language of the statute, which clearly applied the misdemeanor punishment exclusively to licensed dealers, importers, manufacturers or collectors, regardless of mental state. *Id.*

The government next argued that it has discretion under *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), to elect under which penalty provision it would proceed. The Court pointed out that in *Batchelder*, however, the defendant's acts violated two *different* statutes, 442 U.S. at 123–24, 99 S.Ct. at 2204, whereas in *Percival*, the situation involved two different penalty provisions in the *same* statute. Thus the Court stated that *Batchelder* was not applicable. *Percival*, 727 F.Supp. at 1017–18. The issue in *Percival*, and the issue in this case, is solely a matter of interpretation of

punishment imposed by a single criminal statute. Thus the Court was squarely faced with the question presented above, i.e., whether Congress intended the misdemeanor provision only to apply to § 922(m), or whether the provision was intended to apply to all record-keeping violations by licensed dealers, regardless of whether they are prosecuted under § 922 or § 924.

The *Percival* Court proceeded to address the legislative history of § 924(a)(3), and stated that it was enacted as part of the Firearm Owners Protection Act of 1986, Pub.L. 99–308 (1986), which amended the Gun Control Act of 1968. *Percival,* 727 F.Supp. at 1018. The government argued that the legislative history of the particular provision only referenced section 922(m) and did not address 922(b)(5), citing 131 Cong. Rec. S9131–33 (daily ed., Jul. 9, 1985). Therefore the government argues that the felony provision remained applicable to 922(b)(5).

Defendant also relied on legislative history, stating that the Judiciary Committee's proposed amendment to the Gun Control Act of 1968 proposed similar changes to § 924. *See* H.R.Rep. No. 495, 99th Cong., 2d Sess. (1986) (accompanying H.R. 4332). Defendant pointed out that the Judiciary Committee report, and the debates with respect to that bill, were replete with references to the fact that penalties for record-keeping violations, in 922(b)(5) *and* 922(m), were being reduced to misdemeanors. *See, e.g.,* H.R.Rep. No. 495, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.C.C.A.N. 1327, 1328, 1345–46, 1352; 132 Cong.Rec H1650 (daily ed., Apr. 9, 1986).

The Court in *Percival* found that the legislative history was unclear as to whether the ultimately adopted amendments to § 924 were intended to apply to all of the firearm statutes including § 922(b)(5), or simply only to § 924.[3] The statutory language clearly favored defendant, however. *Id.* The Court therefore applied the rule of lenity and held that the misdemeanor provision applied to defendant as the licensed dealer in a straw purchase, even when charged with a violation

of § 922(b)(5), not 922(m) or 924(a)(3). *Id.* at 1019. A district court in the Seventh Circuit also appears to have similarly reduced felony charges against licensed dealers in straw purchases to misdemeanors. *See United States v. Casanova,* 970 F.2d 371, 372 (9th Cir.1992) (stating that the district court reduced five counts from felonies to misdemeanors and dismissed three counts altogether, where the defendant had been found guilty of eleven counts in relation to his role as a licensed dealer in straw purchases).

### C. *Legislative History*

 The government's position on the legislative history in *Percival* ultimately appears incorrect. S. 49 was the original bill in the Senate to amend the gun laws passed in 1968. The floor debate on this bill contained the discussion that the government in *Percival* referenced as showing that the amendments to § 924 only applied to that section and not § 922(b)(5). 131 Cong.Rec. S9131–33 (daily ed., Jul. 9, 1985). The Senate passed S. 49 the same day, and that bill did in fact propose to amend § 924 to reduce record-keeping violations by licensed dealers to misdemeanors. 131 Cong.Rec. S9175 (daily ed., Jul. 9, 1985).

Subsequently the House took up S. 49 and amended it by incorporating the entirety of H.R. 4332. Thus the provision relevant to the present inquiry came not from the original S. 49, but rather from H.R. 4332. 132 Cong.Rec. H1741 (daily ed., Apr. 10, 1986). The House Judiciary Committee issued a report along with H.R. 4332. H.R.Rep. No. 495, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.C.C.A.N. 1327. The Senate later passed the amended version of S. 49 by voice vote, which included H.R. 4332's amendments to § 924. 132 Cong.Rec. S5358 (daily ed., May 6, 1986). The identical amended version of S. 49 had therefore been passed by both houses of Congress, and thus a conference was unnecessary. The amended version of S. 49 was later signed by President Reagan on May 19, 1986. 132 Cong.Rec. D00000–03 (daily ed., May 21, 1986).

---

**3.** The support for the Court's decision in *Percival* is even stronger than the Court there recognized,

as the full legislative history indicates.

The only authoritative legislative history on the amendments to § 924 therefore, are the floor debates with respect to H.R. 4332 and the *amended* version of S. 49, and the only committee report for either bill, the House Judiciary Committee's report on H.R. 4332. Even though both bills, S. 49 as originally passed and H.R. 4332, had similar provisions, the government's reliance in *Percival* on the floor debates in the Senate with respect to the original version of S. 49 *prior* to the House amendments was therefore misplaced.

As the Court in *Percival* recognized, the legislative history was clear in that Congress intended the amendment to reduce record-keeping violations both in §§ 922(b)(5) *and* 922(m) to misdemeanors. *See, e.g.,* H.R.Rep. No. 495, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.C.C.A.N. 1327, 1328, 1345–46, 1352.

### D. *Accomplice Liability Under § 924*

One confusing problem, as stated above, is the number of provisions the government uses to punish the same straw purchases. Given the complexity of §§ 922, 923 & 924, it would not be unreasonable to believe that a legislative attempt to reduce the punishment for all record-keeping violations to misdemeanors, which § 924(a)(3) appears to have done, may have overlooked one of the many provisions in other statutes that the government utilizes to punish licensed dealers in straw purchases. That is the situation *Percival* attempted to correct, and at least two other district courts have been faced with this problem and reached a similar conclusion. *Hunter,* 843 F.Supp. at 253–54; *Casanova,* 970 F.2d at 372.

■ Here the situation is both less and more complicated. Wegg was charged with violations of § 924(a)(1)(A). The language of that provision is nearly identical to 924(a)(3)(A), but the latter applies exclusively to gun dealers. As stated above, it is axiomatic that a principal violation by a gun dealer which could fall within either provision of the statute must fall within the more specific provision, especially when the more specific provision is drafted as an exception

to the general provision. We therefore do not face the problem that concerned the Court in *Percival,* that Congress amended § 924 but inadvertently failed to change 922(b)(5) (or failed to add that section to the list of ones to which § 924(a)(3) applies). Since Congress amended § 924 and the Court is only dealing with provisions within that section, the Court need not be concerned about the problem that Congress may have overlooked a particular provision when it amended § 924. Looking only at § 924, it is clear from the statutory language that licensed dealers involved in the same conduct are to be treated differently from other individual in the very same transaction.

■ The present situation is more complicated, however, because defendant was charged with conspiracy (through 18 U.S.C. § 371) and aiding and abetting (through 18 U.S.C. § 2) the violation of § 924(a)(1)(A), and not with a direct violation of that statute as a principal. The above shows that defendant could not be prosecuted as a principal under § 924(a)(1)(A). Thus the more difficult question presented is whether accomplice or co-conspirator felony punishment under that statute may similarly be foreclosed. That is why the Court felt a detailed inquiry into the legislative history was necessary.

As *Percival* recognized, and a review of the legislative history shows, the 1986 amendment was expressly designed and intended to reduce the criminal liability of licensed dealers from a felony to a misdemeanor, whether the prosecution occurs under § 922(m) or elsewhere within § 922. It is equally clear that the prosecution of licensed dealers, through aiding and abetting and conspiracy, would avoid the direct application of the misdemeanor provision. Stated another way, in a direct straw purchase prosecution of a licensed dealer under § 924(a)(3)(A), the government must show that the licensed dealer knew that the person who was filling out the BATF form was not the intended and actual transferee of the firearm, thus his attestation to the lawfulness of the transaction was false.[4] In an accom-

---

4. Not surprisingly, the Court could find no case which utilized § 924(a)(3)(A). However, the ele-

ments of an offense under that provision, given

plice prosecution under § 924(a)(1)(A), the government would similarly be required to show that the licensed dealer knew that the straw purchaser was not the intended transferee. Thus the gravamen of the offense in both situations is the licensed dealer's knowledge of the identity of the true purchase. Moreover, defendant's acts, and those of others like him, constitute a direct violation of § 924(a)(3)(A), as well as an indirect violation, through the aiding and abetting charges, of § 924(a)(1)(A). Again, the direct method would call for a misdemeanor, while the indirect method would call for a felony.

The question, then, is really whether prosecutors may charge aiding and abetting to activate the felony provision of a statute, where defendant's identical acts would be a direct violation of a misdemeanor provision in the same statute, and where the legislative history strongly suggests that dealers, however situated, were intended to be treated differently under § 924.

As an initial matter, the aiding and abetting statute applies to the entire criminal code. *Pigford v. United States,* 518 F.2d 831, 834 (4th Cir.1975). The Court has identified numerous approaches to the question in this particular case, however, all leading to the same conclusion: the misdemeanor provision may not be circumvented through the use of accomplice liability.

In drafting the amendments in 1986, if Congress made an error of omission in failing to explicitly disallow accomplice liability for licensed dealers in straw purchase prosecutions, may the courts correct that error? The answer is a qualified "yes." United States Supreme Court Justice Antonin Scalia would permit "scrivener's error" review where an absurd result would occur, contrary to the intent of Congress, if the error were not fixed. *Union Bank v. Wolas,* 502 U.S. 151, 163, 112 S.Ct. 527, 534, 116 L.Ed.2d 514 (1991) (Scalia, J., concurring). The Fourth Circuit has repeatedly applied this principle in various circumstances. *E.g., Gamble v. Group Hospitalization & Medical Services, Inc.,* 38 F.3d 126, 129 (4th Cir.1994).

the near identical language to § 924(a)(1)(A),

Initially, we know that Congress inadvertently failed to guarantee that record-keeping violations under § 922(b)(5) were reduced to misdemeanors when Congress amended § 924 to reduce all record-keeping violations by licensed dealers to misdemeanors. In *Percival* the Court fixed that error. This makes it more likely, given the complexity of the gun laws, that Congress made a second error in failing to explicitly prohibit felony accomplice liability for gun dealers. Second, since we know the purpose of the 1986 amendments, it would clearly be an absurd result to allow prosecutors to wholly circumvent those amendments by charging felony violations indirectly through the use of accomplice liability. Under the scrivener's error approach, this Court could again correct the error of omission on the part of Congress to effectuate the purposes of the 1986 amendment with respect to prosecutions of licensed dealers under § 924.

Other approaches have been utilized in recent cases in the context of prosecutions of continuing criminal enterprises under 21 U.S.C. § 848. That statute aims at singling out kingpins for more severe penalties, usually when a large and extensive drug conspiracy is charged. *United States v. Pierson,* 53 F.3d 62, 64 (4th Cir.1995) (citing *United States v. Pino–Perez,* 870 F.2d 1230, 1234 (7th Cir.), *cert. denied,* 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989) (Easterbrook, J., dissenting)). The Second and Seventh Circuits have both addressed whether accomplices may be charged with violations § 848 through the general conspiracy and aiding and abetting statutes, which poses an interesting problem of whether Congress intended such an application. The Seventh Circuit would presume that such prosecutions were allowed given the general applicability of 18 U.S.C. § 2. *Pino–Perez,* at 1234. The Court suggested that it would follow an analysis similar to the "implied right of action" test developed in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979), to address the question. *Pino–Perez,* 870 F.2d at 1234. Similarly, in this context, there would have to be an "affirmative legislative policy" to create

would likely track prosecutions under the latter.

an exemption from the ordinary rules of accessorial liability. *Id.* (quoting *United States v. Falletta*, 523 F.2d 1198, 1200 (5th Cir. 1975)).[5] This is another approach to the question before the Court.

Neither the statute, § 924, nor the legislative history to the amendments, makes any reference to accomplice liability. This likely does not get the inquiry very far. It is clear, however, that the amendments to § 924 intended to avoid felony liability for licensed dealers under the provisions of that statute for record-keeping violations. Accomplice prosecutions, with felony punishments, directly conflict with this legislative "policy." Thus in this case the presumption that accomplice liability may be allowed, only insofar as a felony sentence may result, has been overcome by the need to preserve the statutory scheme.

The Second Circuit, also addressing the issue of whether accomplice liability was intended under the Continuing Criminal Enterprise statute, stated that Congress was deciding whether to create a sentencing enhancement for kingpins or to create an entirely new statute under which to prosecute these individuals. *United States v. Amen*, 831 F.2d 373, 381–82 (2d Cir.1987), *cert. denied*, 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988). With respect to kingpins, Congress chose to create a new statute. The Second Circuit in interpreting this new statute, stated the principle that, where a statute assigns guilt to one, it intends no punishment to others. *Id.* Thus where the Continuing Criminal Enterprise statute intended punishment to kingpins, it did not intend identical punishment to accomplices through the application of § 2. *Id.*

The next approach to the question before the Court, then, is to apply this principle to § 924. In this case the Court is faced with a situation where, through the process of amendment, the statute assigns felony pun-

ishment to one and misdemeanor punishment to another. Thus it treats individual members of the straw purchase transaction differently: licensed dealers are liable for a misdemeanor, all others are liable for a felony. The rule envisioned by the Second Circuit appears to apply here *in greater force;* the statute is not just "silent" as to gun dealers, it expressly treats them differently. *Cf., Falletta*, 523 F.2d at 1200–01. In sum, then, Congress' amendment of § 924 created an unavoidable situation: individuals involved in the very same transaction will receive different punishment, and this statutory scheme must not be overcome by the general accomplice liability provision.

This is not a new idea in the criminal law. Two general exceptions to accomplice liability exist under the common law (assuming the accomplice does not "abandon and warn"). First, one cannot be an accomplice if one is a victim of the offense. Thus the female victim of statutory rape may not be convicted as an accomplice. That does not apply here. Second, one cannot be an accomplice if one's conduct is "inevitably incident" to the commission of the offense. *See*, Model Penal Code § 2.06(6)(b). Thus a prostitute generally cannot be an accomplice in the act of solicitation of a prostitution. The Court finds that this latter exception applies to the prosecution of licensed dealers involved in straw purchases.

The Supreme Court faced an analogous situation in *Gebardi v. United States*, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932). There the Mann Act created an offense of transporting a woman across state lines "for immoral purposes." The question was whether the woman's consent to the transport made her an accomplice to the crime, where the statute did not explicitly punish the woman. 287 U.S. at 121, 53 S.Ct. at 37. The Supreme Court reversed the woman's conviction for conspiracy, stating:

---

**5.** *Falletta* involved the prosecution as an accomplice of a seller of a firearm to an individual who, as a convicted felon, was prohibited from possessing any firearm. *Id.* at 1198–99. The Fifth Circuit found it to be a weak presumption that a "giver" could not be charged as an accomplice of a "receiver" in a prosecution of the "receiver," but overcame that presumption by

focussing on legislative intent. *Id.* at 1199. Ironically, the statute involved in *Falletta* was Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, the source of the gun laws at issue in this case. *Falletta* is not applicable here, however, because that act was subsequently amended to include the misdemeanor provision at issue in this case.

908

we perceive in the failure of the Mann Act to condemn the woman's participation in those transportations which are affected with her mere consent, evidence and affirmative legislative policy to leave her acquiescence unpunished. We think it a necessary implication of that policy that when the Mann Act and the conspiracy statute came to be construed together, as they necessarily would be, the same participation which the former contemplates as an *inseparable incident* of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically to be made punishable to the latter. . . .

It is not to be supposed that the consent of an unmarried person to the adultery with an unmarried person, where the latter alone is guilty of the substantive offense, would render the former an abettor or a conspirator, or that the acquiescence of a woman under the age of consent would make her a conspirator with the man to commit statutory rape upon herself. The principle, determinative in this case, is the same.

287 U.S. at 123, 53 S.Ct. at 38 (emphasis added and citations omitted).

The principle applies in this case as well, again with greater force. The licensed dealer's participation in the sale is "inevitably incident" to the straw purchase, whether or not he has the knowledge that the sale is illegal. A straw purchase could not occur but for the involvement of the dealer, much like adultery or statutory rape could not occur without the involvement of the "partner" or the under-age female. Furthermore, just as the criminal law may treat the customer of a prostitute differently from the prostitute by having a separate statute or the adulterer different from his or her "partner," the present statute explicitly treats sellers of guns different from purchasers. *See also, United States v. Hogan,* 886 F.2d 1497, 1503–04 (7th Cir.1989) (stating the principle but showing its inapplicability where the statute is explicitly intended to include the incidental conduct, such as where a statute is extended to punish a bribe-giver as well as the bribe-taker).

■ In conclusion, whether the Court utilizes the scrivener's error approach, the "legislative policy" approach used by the Seventh Circuit, the presumption of legislative silence used by the Second Circuit, or the "inevitably incident" rule, accomplice liability resulting in a felony sentence would be inappropriate in the instant case. As *Gebardi* shows, the fundamental question in each of the methods utilized by the Court is that of Congress' intent. Given that accomplice liability would contravene the stated purpose of the 1986 amendments, the Court holds that defendant may only be sentenced under the misdemeanor provisions for the aiding and abetting counts for which he was convicted. Other district Courts appear to have reached a similar result. *See e.g., Casanova,* 970 F.2d at 372 (where some of the charges that were reduced to misdemeanors included aiding and abetting counts).

E. *Conspirator Liability*

■ The conspiracy charges are a little different, but the Court believes require the same result. In the conspiracy charge, the government had to prove no single actual violation, but merely an agreement between Wegg, the straw purchaser, and the intended transferee to violate § 924, and an overt act in furtherance of that conspiracy. The gravamen of the conspiracy offense is the agreement, and indeed the elements of this offense are not identical to the elements of a charge against a licensed dealer as a principal or aider and abettor under § 924(a)(1)(A). However if "the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C. § 371. It is true that the jury found that defendant conspired with the straw purchasers to violate § 924(a)(1)(A). Yet, we know that defendant could not be prosecuted as a principal under that section, since the same language appears in § 924(a)(3)(A).

Starting from the presumption that a conviction as a principal or as an aider or abettor would result in a misdemeanor for licensed dealers in the straw purchase situ-

ation under § 924, as shown above, Wegg's conspiracy to commit those very same acts can only result in misdemeanor punishment. *See, e.g., United States v. Chapman,* 827 F.Supp. 369, 370 (E.D.Va.1993) (Cacheris, C.J.) (while confronting an issue of supervised release with respect to one of the defendants in *Percival,* stating that the prosecution of the licensed gun dealer for conspiracy to commit straw purchases in violation of 18 U.S.C. §§ 371, 922(b)(3) and (b)(5) resulted in a sentence of six months imprisonment, implying that all charges, including the conspiracy, were treated as a misdemeanor).

The legislative intent would appear to counsel against felony liability as well, as a conspiracy prosecution resulting in a felony sentence would be another way to get around the express language of § 924. Here Congress exempted the licensed sellers from felony punishment. It would again violate the statutory intent to punish the sellers as felons through the use of § 371 where the statute expressly allows only misdemeanor liability. *See, e.g., Gebardi,* 287 U.S. at 123, 53 S.Ct. at 38; *Hunter,* 843 F.Supp. at 253–54 (requiring conspiracy count to apply misdemeanor provision, relying on *Percival*). Defendant therefore will only be sentenced as if all of the counts were misdemeanors.

Despite this Court's displeasure in implementing Congress' counter-productive policy of treating the sellers of firearms significantly more leniently than the buyers in the same transaction, though the sellers may be responsible for dozens or hundreds of guns getting into the wrong hands, this Court must faithfully apply the law.

U.S.S.G. § 2K2.1(a)(8) applies to convictions under 18 U.S.C. § 922(m) and assigns a base offense level of 6. Because § 922(m) and § 924(a)(3)(A) result in identical punishment under § 924(a)(3), and because each applies to the straw purchase prosecution of a licensed dealer, U.S.S.G. § 2K2.1(a)(8) will be applied here for the defendant's convictions for aiding and abetting and conspiracy under 18 U.S.C. § 924(a)(3)(A).

## III. Other Sentencing Issues

### A. Perjury

■ The presentence report indicates that defendant's base offense level should be increased by two levels for obstruction of justice. Defendant objects to this enhancement. United States Sentencing Guidelines Section 3C1.1 requires the addition of two levels for obstruction of justice, stating that such should be added "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." The list of such behavior includes "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, Application Note 3(b).

Defendant argues that he cooperated with the government from the very beginning, including turning over all of his records without a subpoena having been issued. Defendant also travelled from New Jersey for interviews by government agents. Defendant therefore argues, without citing any cases, that he should receive a reduction for acceptance of responsibility, and the obstruction of justice enhancement should not apply.

These arguments miss the point of the enhancement. A defendant's right to testify does not include the right to commit perjury. *United States v. Havens,* 446 U.S. 620, 627, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980). Here defendant denied under oath, before the jury, that he knew that the actual transferees of the firearms were not the individuals who were filling out the forms. The jury necessarily found beyond a reasonable doubt, however, that he allowed these transactions with actual knowledge of their illegality. This constitutes perjury. An essential element of the offense, here the knowledge that the purchaser was not the intended transferee, is certainly a material matter. Therefore the Court finds that defendant gave false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. *See United States v. Murray,* 65 F.3d 1161, 1165 (4th Cir.1995). Nor does this kind of claim allow itself for "confusion, mistake or faulty memory." The two level enhancement will therefore be applied.

B. *Acceptance of Responsibility*

■ Based on defendant's cooperation prior to trial in coming to Virginia for interviews and uncoerced production of all of defendant's records, defendant believes he should receive a reduction for acceptance of responsibility. The probation officer and the government believe that no reduction is warranted.

The burden of proof on this issue, a preponderance test, rests with the defendant. *United States v. Urrego–Linares*, 879 F.2d 1234, 1239 (4th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Application Note 4 provides that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstruction or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both ... may apply." U.S.S.G. § 3E1.1, Application Note 4 (1995).

In this case the Court has enhanced defendant's sentence because of his perjury at trial which constitutes obstruction of justice. Thus the reduction is unwarranted. *United States v. Melton*, 970 F.2d 1328, 1335–36 (4th Cir.1992) (holding the denial of a reduction where an obstruction enhancement not clear error where defendant falsely testified); *Casanova*, 970 F.2d at 378 (refusal by district court to adjust downward for acceptance of responsibility where licensed dealer committed perjury not an abuse of discretion). The Court will not reduce defendant's offense level.

### Conclusion

18 U.S.C. § 924(a)(3)(A) contains a maximum penalty of one year imprisonment, a fine of $100,000, and one year of supervised release. *See* 18 U.S.C. § 924(a)(3). U.S.S.G. § 2K2.1 governs firearm violations. A violation under § 922(m) would be most analogous to a violation of this section, and therefore, U.S.S.G. § 2K2.1(a)(8) requires a base offense level of 6. It is clear that the defendant is responsible for all of the guns on the substantive counts in which he was convicted, which yields a total of 51 guns. Because there were more than 50 firearms, 6 levels

must be added through § 2K2.1(b)(1)(F). Thus the offense level is 12, increased by 2 levels for obstruction of justice (§ 3C1.1) because defendant denied his guilt under oath, constituting perjury, resulting in a total offense level of 14. All of the counts of conviction were grouped together under § 3D1.2(a).

Defendant has no criminal history which places him in category I and the offense level total is 14. The guideline range for this combination is 15 to 21 months. The statutory and guideline maximum term of supervised release is one year. The statute allows a fine of up to $100,000.00, and the guideline range is between $4000 and $40,000. Because defendant was convicted of 29 counts, the special assessment is $725.00.

Therefore, pursuant to the Sentencing Reform Act of 1984, it is the Judgment of the Court that the defendant, Brian Wegg, is hereby committed to the custody of the United States Bureau of Prisons, to be imprisoned for a term of 15 months. The term consists of 12 months on all counts of conviction. All of the aiding and abetting counts (2–5, 8, 12–15, & 17–32) shall run concurrently with each other. All of the conspiracy counts (1, 6, 9, & 16) shall run concurrently with each other, with 3 months of the sentence on these counts to run consecutively to the sentence imposed on the aiding and abetting counts, and with 9 months of the sentence imposed on these counts to run concurrently with the sentence imposed on the aiding and abetting counts. *See, e.g.*, *United States v. Ali*, 897 F.Supp. 267, 270–71 (E.D.Va.1995). Thus the total punishment imposed shall be 15 months imprisonment.

The Court also imposes a term of supervised release on all counts of one year, all to run concurrently. The defendant shall pay a fine of $6000.00, which shall be comprised of $200 each on the aiding and abetting counts and $250 each on all of the conspiracy counts. Defendant shall also pay a special assessment in the amount of $725. A judgment order consistent with this opinion has been entered. The Clerk is DIRECTED to send a copy of this opinion to counsel for all parties. This opinion is entered *Nunc Pro*

*Tunc* March 5, 1996. However, the time for filing a notice of appeal is extended until March 22, 1996.

IT IS SO ORDERED.