In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1802

United States of America,

Plaintiff-Appellee,

v.

John C. Rietzke,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00-CR-88--Rudolph T. Randa, Judge.

Argued October 24, 2001--Decided February 4, 2002


   Before Harlington Wood, Jr., Coffey, and
Easterbrook, Circuit Judges.

   Coffey, Circuit Judge.  John Rietzke, a
federally licensed firearms dealer,
operated Grassel's Guns in Greenfield,
Wisconsin, and was arrested after selling
guns to a convicted felon thru a straw
purchaser, an undercover agent of the
Bureau of Alcohol, Tobacco, and Firearms
(ATF). Rietzke pleaded guilty to one
count of "willfully fail[ing] to keep
records of the name, age and place of
residence of" the person to whom he had
sold or delivered a firearm, contrary to
18 U.S.C. sec. 922(b)(5) & 18 U.S.C. sec.
924(a)(1)(D). In his plea agreement
Rietzke preserved the right to appeal the
trial judge's decision to convict and
sentence him under the statute's felony
provision instead of its misdemeanor pro
vision, which he contends was created for
the purpose of treating licensed firearms
dealers more leniently, and he now so
appeals. We affirm.

I.  Factual Background

   John Rietzke, a federally licensed
firearms dealer, operated Grassel's Guns
in Greenfield, Wisconsin. The Bureau of
Alcohol, Tobacco and Firearms (ATF) began
investigating Rietzke after receiving
information from a cooperating witness,
Mitchell Critton, that Rietzke had been

violating federal firearms laws. Critton told ATF agents that Rietzke had sold firearms to him several years before, despite knowing that Critton was a convicted felon. Critton told the agents that he and Rietzke accomplished the earlier sale through the use of a "straw purchaser," someone who acts as an agent or intermediary for another who is ineligible to purchase the firearms directly.

On December 3, 1999, ATF sent Critton to Rietzke's store in order that he might negotiate a firearms purchase using a straw purchaser. Rietzke recognized Critton from their prior dealings, and Critton reminded Rietzke of his felony record. Critton then inquired of Rietzke as to whether he could purchase a Beretta pistol, if he could arrange to use his girlfriend as a straw purchaser. Rietzke agreed to the arrangement and commented that he could not sell guns directly to Critton.

On December 14, 1999, Critton returned to Grassel's Guns along with Robin Broeske, an undercover ATF agent posing as his girlfriend. Critton and Rietzke discussed the purchase price of the gun that Critton desired, and Rietzke produced the appropriate ATF paperwork for Broeske to complete. Rietzke specifically instructed Broeske to answer all the questions on the Handgun Hotline form with a "yes," meaning that she was eligible to purchase weapons. Broeske completed the paperwork using the name "Bobbie Day," her undercover name, and Critton handed Rietzke $720 for the purchase, leaving a small balance to be paid when he took possession of the gun after the federally mandated waiting period.

On December 16, 1999, after the two-day, federally-mandated waiting period, Critton returned to the gun outlet in order to pick up the pistol. At that time Rietzke provided Critton with additional paperwork for "Bobbie" to complete. Critton left the store momentarily to request that Agent Broeske, who had been waiting in the car outside the store, return to the store with him in order that she might complete the forms and Critton receive the firearm. Upon Broeske's entry into the store, Rietzke instructed her to complete the paperwork

and directed her to answer the question in the affirmative that inquired whether she was the actual buyer of the gun. While Broeske completed the paperwork, Rietzke and Critton discussed the ammunition he desired as well as the potential purchase of additional firearms. Rietzke ultimately agreed to sell Critton an additional weapon, a MAK-90 rifle. During Rietzke's and Critton's negotiation, Broeske completed the paperwork and left the store without taking possession of the two firearms.Instead, Critton paid Rietzke the $389 balance for the weapons (which had increased due to Critton's purchase of the additional weapon) and took possession of and exited the store with both the Beretta pistol as well as the MAK-90 rifle.

During February and March 2000, Rietzke agreed to sell two additional guns to Critton again using "Bobbie Day" as a straw purchaser. Documents obtained during a government search warrant revealed that Rietzke retained forms completed and signed by "Bobbie Day" to purchase the two guns described herein and that Rietzke had made the proper calls confirming that "Bobbie Day" was not a convicted felon.

A grand jury sitting in the Eastern District of Wisconsin on May 2, 2000, returned a four-count indictment against Rietzke. Counts one and three charged Rietzke with knowingly selling firearms to a convicted felon, 18 U.S.C. sec. 922(d), and counts two and four charged him with "willfully fail[ing] to keep records of the name, age and place of residence of" the person to whom he sold firearms, 18 U.S.C. sec. 922(b)(5) & 18 U.S.C. sec. 924(a)(1)(D). On May 30, 2000, Rietzke moved to dismiss the indictment, arguing that it failed to adequately set forth facts that constituted a felony violation. In his motion, Rietzke argued that, because he was a licensed firearms dealer, sec. 922(b)(5) was punishable only as a misdemeanor and that sec. 922(d) did not prohibit the sale to convicted felons using straw purchasers. In her report the magistrate judge recommended to the trial judge that the defendant's motion be denied and the trial judge adopted her recommendation. The judge emphasized that the charge to which Rietzke pleaded was

for willful violations of gun control laws, which required a proof element different from those found in 18 U.S.C. sec. 924(a)(3) and 18 U.S.C. sec. 924(a)(1)(A). On August 30, 2000, Rietzke entered a conditional plea agreement in which he pleaded guilty to count two of the indictment/1 but reserved the right to challenge the trial judge's determination that the offense of conviction was a felony rather than a misdemeanor.

## II. Issue

On appeal, Rietzke claims that the trial judge committed error in punishing him under the felony provision of sec. 924(a)(1)(D) for willful failure to maintain records contrary to sec. 922(b)(5), rather than under the misdemeanor provision of sec. 924(a)(3) for being a licensed dealer who knowingly makes a false statement or representation with respect to the information required to be kept in his records. We review de novo the trial judge's interpretation of the statutory scheme. United States v. Hoogenboom, 209 F.3d 665, 669 (7th Cir. 2000).

## III. Analysis

Licensed firearms dealers are required to maintain records of the persons to whom they sell or deliver weapons. Rietzke was convicted of violating sec. 922(b)(5), which provides in pertinent part:

It shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . . (5) any firearm . . . to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person . . . .

Section 922(b)(5) does not itself contain a penalty provision. Instead, the penalty provision can be found in sec. 924(a), which contains both a felony and a misdemeanor provision. The felony provision, sec. 924(a)(1), provides that:

(a)(1)Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever--

(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter . . . ;

(D) willfully violates any other provision of this chapter,

shall be fined under this title, imprisoned not more than five years, or both . . . .

On the other hand, sec. 924(a)(3) provides for misdemeanor penalties for licensed dealers who "knowingly make[ ] any false statement or representation with respect to the information required by the provisions of this chapter to be in the records of a person licensed under this chapter . . . ."

Rietzke argues that by enacting sec. 924(a)(3) Congress elected to punish firearms dealers who violate sec. 922(b)(5) more leniently than other individuals, pointing out that sec. 924(a)(3) punishes violations of sec. 922(b)(5) as misdemeanors while sec. 924(a)(1)(A) punishes the same violations as felonies. Rietzke assumes that, because sec. 924(a)(3) and sec. 924(a)(1)(A) punish identical conduct, Congress therefore intended to limit prosecutorial discretion in selecting un der which provision of the statute to prosecute licensed firearms dealers. Rietzke supports his argument by pointing to United States v. Wegg, 919 F. Supp. 898, 901 (E.D. Va. 1996), which ruled that sec. 924(a)(3) carved an exception for licensed firearms dealers and thus firearms dealers who violate sec. 922(b)(5) must be punished under the misdemeanor provision rather than the felony provision of the statute. Wegg reasoned that because the statute described "anoffense generally and attribute[d] felony punishment to all violators except for an excepted group . . . those in the excepted group may only be prosecuted for the misdemeanor." Wegg, 919 F. Supp. at 903.

Of course Wegg carries no binding authority, nor do we even find it remotely persuasive. A reading of Wegg reveals that the defendant was convicted of aiding and abetting in the making of

false statements with respect to a firearms transaction, and not a willful failure to keep records. See Wegg, 919 F. Supp. at 899. Rietzke urges us to conclude that his behavior was similar to that of the defendant in Wegg and argues that he did keep the required records-- albeit a record he admittedly knew to be false--because he made a record reflecting that "Bobbie Day" was the purchaser of the guns. But sec. 922(b)(5) makes it unlawful for a licensed dealer to "sell or deliver" a firearm to any person "unless the licensee notes in his records . . . the name, age, and place of residence of such person . . . ." 18 U.S.C. sec. 922(b)(5) (emphasis added). Although Rietzke made a false statement in his records that he sold two firearms to "Bobbie Day," he failed to make any record whatsoever regarding Mitchell Critton, the person to whom he delivered the weapons, from whom he received payments of $720 and $389, and whom he well knew to be the actual purchaser of the two guns referred to herein. Cf. United States v. Choice, 201 F.3d 837, 841 (6th Cir. 2000) (discussing the difference between cases in which the defendant is charged with falsifying a record and cases in which the defendant fails to keep records). The prosecutor, relying on the plain language of the statute, did exercise prosecutorial discretion and charged Rietzke with a violation of the felony provision contained in sec. 924(a)(1)(D), for willfully failing to keep a record regarding his sale of weapons and their delivery to Critton.

In any event, it matters little that Rietzke now characterizes his conduct as making a false record because the plea agreement, which he knowingly and voluntarily signed, and the indictment under which he was charged plainly charged him with the "willful failure to keep records" regarding the person to whom he sold or delivered firearms. During the plea colloquy, the government asserted in its offer a proof that Rietzke failed to make any records for the firearms he delivered to Mitchell Critton other than the false records he made reflecting that "Bobbie Day" purchased the weapons, in spite of the fact that he well knew he was required by law to create a record for Critton. Thus, the government established a factual

basis for the charge that Rietzke failed to make a record for Mitchell Critton, the person to whom he delivered and whom he knew to be the actual purchaser of the two firearms. Rietzke has not argued that his guilty plea was not knowingly and voluntarily made and thus cannot now challenge the factual basis of his plea, for a guilty plea admits, in legal effect, the facts as charged. United States v. Robinson, 14 F.3d 1200, 1205 (7th Cir. 1994).

Moreover, Wegg is not convincing because it focused on the similarity between sec. 924(a)(1)(A) and sec. 924(a)(3), both of which punish a knowingly false statement with respect to the required information of sec. 922(b)(5). Wegg never did discuss, much less consider, the distinction between sec. 924(a)(1)(D), which requires willful behavior, and sec. 924(a)(3), which requires a lesser degree of culpability. Section 924(a)(3) prohibits licensed firearms dealers from knowingly making false statements or representations in violation of sec. 922. Section 924(a)(1)(D), on the other hand, punishes willful violations of sec. 922. "The only reasonable distinction between section 924(a)(1)'s 'knowingly' and 'willfully' standards is that the latter requires knowledge of the law." United States v. Obiechie, 38 F.3d 309, 315 (7th Cir. 1994); see also Bryan v. United States, 524 U.S. 184, 193 (1998). Thus in charging Rietzke under sec. 924(a)(1)(D) the prosecution was required to prove that Rietzke was aware of the law and that he voluntarily and intentionally violated a known legal duty, an element it need not have proved had he been charged under sec. 924(a)(3). Thus it is clear that, under the plain language of the statute, sec. 924(a)(1)(D)-- under which Rietzke entered his plea of guilty--and sec. 924(a)(3) punish different conduct, and the prosecutor had the discretion to determine under which provision she wished to charge Critton.

Hence Rietzke's claim that he should have been charged under sec. 924(a)(3) is contrary to the well-established principles set forth in United States v. Batchelder, 442 U.S. 114 (1979). The Supreme Court has made clear that when multiple criminal statutes apply to the same conduct, the prosecutor has the discretion to choose under which statute

to proceed. 442 U.S. 114; see also United States v. Lov-It Creamery, Inc., 895 F.2d 410, 410 (7th Cir. 1990). Neither is a defendant "'entitled to choose the penalty scheme under which he will be sentenced.'" United States v. Harbour, 809 F.2d 384, 392 (7th Cir. 1987) (quoting Batchelder, 442 U.S. at 125). In this case, the prosecutor in the exercise of her prosecutorial discretion chose to charge Rietzke under the felony provision of the statute and not the misdemeanor provision, and it was within her discretion to do so.

Rietzke makes two unconvincing attempts to remove his case from the ambit of Batchelder. First, Rietzke argues that he should have been punished under the misdemeanor provision, rather than the felony provision, because Congress intended that firearms dealers be punished more leniently than non-dealers who also violate the statute and thus limited prosecutorial discretion by requiring that they charge licensed firearms dealers under sec. 924(a)(3) and not under sec. 922(a)(1). But nothing in the statute or its legislative history suggests such an intent. As noted earlier, sec. 924(a)(1)(D) requires a greater level of culpability than sec. 924(a)(3), willfulness. Nothing in sec. 924(a)(3) suggests that it is the sole provision under which a licensed firearms dealer can be charged. As such, the plain language of the statute suggests only that Congress intended to "allow for the option of misdemeanor prosecution for licensed dealers who make false statements on ATF forms, while leaving intact the felony prosecution structure for those . . . whose flagrant and repeated actions in accepting false ATF forms from straw purchases . . . warrants felony punishment." United States v. Al-Muqsit, 191 F.3d 928, 935 (8th Cir. 1999), judgment vacated en banc as to an unrelated defendant, 210 F.3d 820 (2000) (emphasis added). Three of our sister circuits that have reached the issue agree. Al-Muqsit, 191 F.3d at 935; Choice, 201 F.3d at 840-841; United States v. Jarvouhey, 117 F.3d 440, 442 (9th Cir. 1997).

Further, the legislative history fails to support Rietzke's argument. In the words of a sponsor, the Firearms Owners Protection Act, which added sec.

924(a)(3), was intended to ensure that a dealer would not be "subjected to harsh felony penalties for technical violations of the rigid record-keeping standards" of the Act. 131 Cong. Rec. 18, 187 (19850(statement of Sen. Hatch). The plain language of the statute clearly distinguishes between willful and knowing violations of the law, and the literal meaning of a statute should be overridden only in those rare cases, and this is not one of them, where that meaning is demonstrably at odds with the intentions of the drafters. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989).

Rietzke also argues that Batchelder does not apply because a prosecutor may not choose between two subsections of the same statute. But such a rule makes no sense, and an example will show why. The statute governing the possession and distribution of illegal drugs has numerous subsections, many of which overlap. 21 U.S.C. sec. 841. To suggest that a prosecutor cannot exercise discretion in the prosecution of a drug dealer who distributes 2 kilograms of heroin, and must proceed than sec. 841(b)(1)(B), which provides for a maximum sentence of forty years, rather than under 21 U.S.C. sec. 841(b)(1)(A), which provides for a maximum term of imprisonment of life, would be perverse. We are not convinced with Rietzke's argument for he has failed to offer any reason why Batchelder should so be limited, and we remain convinced that prosecutors must be free to determine under which statute they proceed.

IV. Conclusion

Rietzke's argument that he should have been punished under sec. 924(a)(3) rather than under sec. 924(a)(1)(D) must fail. Prosecutors in their exercise of prosecutorial discretion are entitled to determine under which statute to proceed. In this case, the prosecutor chose to prosecute Rietzke under the applicable felony provision, rather than the misdemeanor provision.

AFFIRMED.

FOOTNOTE

/1 As part of the terms of the plea agreement, the

government agreed to dismiss the other three counts at the time of sentencing, though the court could consider them at the time of sentencing.