### UNITED STATES of America, Plaintiff,

v.

**D–1 David JOHNSON, D–2 Sonya Stinson, D–3 Sheritha Cray, D–4 Mahogany Mitchell, D–5 Tonya Stinson, D–6 Nola McClinton, D–7 Eboni Harmon, D–8 Mary Marshall, D–9 Deonna Atkinson, D–10 Sean Carney, D–11 Patrick Carney, Defendants.**

No. 01–90036–11.

United States District Court, E.D. Michigan, Southern Division.

June 26, 2002.

he had little choice but to quit rather than face continued harassment.

R. Michael Bullotta, Assistant United States Attorney, for Plaintiffs.

Ronald W. Chapman, Troy, MI, for Defendants.

## OPINION AND ORDER OF THE COURT DENYING DEFENDANTS SEAN CARNEY AND PATRICK CARNEY'S MOTION TO DISMISS THE INDICTMENT

BATTANI, District Judge.

### I. INTRODUCTION

Before the court is Defendants Sean Carney and Patrick Carney's motion to dismiss the indictment against them, charging them with 13 counts of aiding and abetting persons making false statements in gun transactions, felonies pursuant to 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 2(a). Defendants assert that the prosecution has impermissibly overcharged them with felony offenses when the relevant statute, 18 U.S.C. § 924(a)(3)(A), mandates that the conduct of which they are accused may be punished only as a misdemeanor.

### II. STATEMENT OF FACTS

Defendants are gun dealers. They are co-defendants with 9 other parties, all of whom are accused of violating federal law concerning record-keeping in gun transactions. Allegedly, Defendant David Johnson, a convicted felon, illegally bought guns from the Carneys with their full knowledge and participation through the use of straw purchasers. The alleged straw purchasers were eight women who signed the relevant paperwork as purchasers of the weapons, i.e. made false statements in the records of gun transactions. However, it is alleged, the Carneys in fact sold the guns directly to Johnson, and often the straw purchasers did not even remain in the store during the transaction. It is alleged that between February 17 and June 29, 2000, the Carneys sold Johnson four AK–47 rifles, eighteen 9 mm. semi-automatic handguns, two .38 caliber semi-automatic handguns, and one .40 caliber revolver.

### III. LEGAL ANALYSIS

Federal law requires specific record-keeping in gun transactions and prohibits the making of false statements in those records. Penalty provisions are contained in § 924. Of relevance here, § 924(a)(1)(A) provides that: *"whoever ... knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter ... shall be fined under this title, imprisoned not more than five years, or both"*, i.e. a felony offense. (emphasis added)

However, § 924(a)(3)(a) provides an exception for gun dealers: *"Any licensed dealer ... who knowingly ... makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter ... shall be fined under this title, imprisoned not more than one year, or

both," i.e. a misdemeanor offense. (emphasis added)

The Carneys are licensed gun dealers, but were not charged with a misdemeanor under § 924(a)(3). They were charged with aiding and abetting their co-defendants' making of false statements. 18 U.S.C. § 2(a) provides that whoever aids or abets another in a crime is "punishable as a principal" in that crime. Thus, the Carneys were charged with 13 felonies of aiding and abetting violation of § 924(a)(1)(A).

It is a fairly unremarkable proposition that the Carneys, if charged with the crime of making their own false statements in their records, could only be charged with a misdemeanor pursuant to § 924(a)(3)(A). The issue before the court is whether § 924(a)(3)(A) precludes the prosecution from charging the Carneys with felony aiding and abetting, as set forth above. Ordinarily, it would also be a fairly unremarkable proposition that the prosecution is not so precluded. The straightforward argument is that § 2(a) applies to the entire criminal code, allowing for charging of accomplice crimes on any provision, and one who is charged as an accomplice is punishable as a principal. Further, when an act violates more than one statute, the prosecution may choose to proceed under either. *U.S. v. Batchelder*, 442 U.S. 114, 123–124, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). However, such a straightforward analysis was rejected in a district court decision heavily relied upon by Defendants, *U.S. v. Wegg*, 919 F.Supp. 898 (E.D.Va.1996).

In *Wegg*, the district court faced the exact question presented here: whether the defendant gun dealer, who had knowingly engaged in a straw purchase, could be subject to a felony penalty as an accessory when, if he were directly charged, he would subject only to a misdemeanor penalty. The court held that he could not be charged with a felony as an accomplice. *Wegg*, 919 F.Supp. at 905–908. The court first noted that the gravamen of the felony aiding and abetting offense and the misdemeanor offense were identical. *Id.* at 905–906. The court then engaged in a lengthy review of the statute and the question before it, which culminated in this holding: "[N]umerous approaches to the question in this particular case ... all [lead] to the same conclusion: the misdemeanor provision may not be circumvented through the use of accomplice liability." *Id.* at 906. The court considered the following approaches: 1) "scrivener's error" review, *id.;* 2) legislative policy review, *id.* at 906–907; 3) a presumption of legislative silence, *id.* at 907; and 4) the "inevitably incident" rule, *id.* at 907–908. Before engaging in a discussion of *Wegg*, the court first reviews Sixth Circuit case law on this question.

The question presented in *Wegg*, and here, has not been directly considered in the Sixth Circuit. Thus Defendants must rely on inference. Defendants first cite to *U.S. v. Hunter*, 843 F.Supp. 235 (E.D.Mich.1994).[1] Defendants assert that *Hunter* stands for the proposition that § (a)(3)(A) is the *only* penalty provision of § 924 which can apply to gun dealers. Regardless of the correctness of Defen-

---

1. Defendant gun dealers had moved to dismiss the indictment charging them with falsifying records. *U.S. v. Hunter*, 843 F.Supp. 235, 253 (E.D.Mich.1994). The court noted that the government had relied on the felony penalty provisions of § (a)(1)(A) when charging defendants, rather than the misdemeanor provisions of § (a)(3)(A). The court held: "[T]he government can charge the four Defendants who kept their own records ... only with a misdemeanor for falsifying these records." *Id.* at 264. *Hunter* says nothing about bringing felony charges of aiding and abetting under § 2.

dants' assertion or not, such a position was rejected by the Sixth Circuit in *U.S. v. Choice*, 201 F.3d 837 (6th Cir.2000). *See also U.S. v. Jarvouhey*, 117 F.3d 440 (9th Cir.1997) (holding that defendant was properly sentenced for a felony for his failure to keep required records).

In *Choice*, defendant gun dealer had pled guilty to a violation of § 922(b)(5), defined as *knowingly and willfully* selling a firearm *without making a record* of the transaction. *Choice*, 201 F.3d at 840. The district court sentenced defendant under the felony provisions of § 924(a)(1)(D). Defendant appealed asserting that his offense could only be punished as a misdemeanor under § (a)(3)(A).

§ 924 contains the penalty provisions for violations of § 922(b)(5). As set forth above, § 924 provides for both misdemeanor and felony penalties. Of relevance in *Choice*, the misdemeanor penalty contained in § (a)(3)(A) applies when a *dealer knowingly* makes a false statement *in a record* of a gun transaction. The felony penalty contained in § (a)(1)(D) applies when *anyone willfully* violates any provisions of the relevant chapter. The court rejected defendant's argument that the misdemeanor penalty applied:

> By its terms, § 924(a)(3)(A) clearly applies only to licensed dealers who make false statements in connection with firearms sales, and not to those who fail to keep any records at all. Furthermore, § 924(a)(3)(A) refers only to knowing offenses and therefore implicitly excludes Choice's willful violation from its scope. Thus, because § 922(b)(5) contains no penalty provision of its own, Choice's willful violation of failing to keep records is punished by the catch-all felony provision of § 924(a)(1)(D).

*Id.* at 840. Thus, the court found that on a plain reading of the statute, the government was not precluded by § (a)(3)(A) from bringing felony charges. The court also distinguished *Hunter* on its facts,[2] and implicitly rejected the district court's apparent "belief that § 924(a)(3) was the only penalty provision that could be applied to recordkeeping offenses by licensed dealers." *Id.*

Thus, the most that can said for *Choice*, vis-a-vis the question before this court, is that it is clear that the misdemeanor provisions of § 924(a)(3)(A) do not act as an automatic bar to charging a defendant gun dealer with a felony crime pursuant to the other provisions of the chapter and as provided for in § 924(a)(1)(A). On a broad reading, then, *Choice* supports the government's decision to charge Defendants here as felony accomplices.

The *Choice* court discussed *Wegg* very briefly, merely distinguishing *Wegg* on its facts without either rejecting or accepting the substance of the district court's opinion.[3] Thus *Choice* provides no support for Defendants' assertion here that the Sixth Circuit has implicitly accepted the holding and reasoning of *Wegg*. Moreover, this

---

**2.** The court noted that, first, *Hunter* concerned only falsification of records under § (a)(3)(A)—which was not broad enough to encompass a failure to keep records. Thus § (a)(3) was inapplicable to defendant Choice. Second, it was unclear what provision of the statute defendants were charged with violating, but they were not charged with violation of § 922(b)(5) and *Hunter* could shed no light on how to treat violations of that section. *U.S. v. Choice*, 201 F.3d 837, 841–842 (6th Cir.2000).

**3.** "[D]espite the district court's occasionally broad language, it is clear that the defendant in that case was convicted of aiding and abetting in making false statements with respect to a firearms transaction, not of failing to keep records. Thus, the district court found that the conduct at issue was exclusively governed by § 924(a)(3)(A), which, by its terms, applies to false statements, but not to complete omissions in keeping a record." *Choice*, 201 F.3d at 841.

court finds *Wegg*'s reasoning unpersuasive. Despite the lengthy review and various methods of analysis engaged in by the *Wegg* court, the gravamen of its decision is that the legislative history of the statute reveals that Congress intended "to reduce the punishment for all record-keeping violations to misdemeanors, which § 924(a)(3) appears to have done ...." *Wegg* 919 F.Supp. at 905. Clearly, such a broad view is not endorsed by the Sixth Circuit, as *Choice* makes clear. Further, the court finds a more persuasive reading of legislative history and intent in an Eight Circuit case, *U.S. v. Al–Muqsit*, 191 F.3d 928 (8th Cir.1999).[4]

In *Al–Muqsit*, gun dealer defendants were convicted of conspiracy and making false statements on gun transaction records and sentenced as felons under § (a)(1)(A). The defendants conspired to violate § (a)(1)(A) by evading its reporting requirements "through the use of 'straw purchasers,' purchasers who filled out the forms for guns bought by and transferred to [co-defendants]." *Al–Muqsit*, 191 F.3d at 932, 935. The court held that defendants were properly charged under § (a)(1)(A).

> There is simply nothing in the language or legislative history of the statute or legislative history to indicate Congress intended to do anything more than *allow for the option of misdemeanor prosecution* for licensed dealers who make false statements on ATF forms, *while leaving intact the felony prosecution structure* for those such as [defendants] whose flagrant and repeated actions in accepting false ATF forms from straw purchasers and backdating ATF forms to avoid notification requirements warrants felony punishment.

*Id.* at 935 (emphasis added). After review of the legislative history, the court further held that such history "suggests [the misdemeanor] amendments were intended 'to ensure that law-abiding citizens would not be subject to severe criminal penalties for unintentional missteps.'" *Id.* (citation omitted). Meanwhile, the felony penalties were left intact to address more serious offenses, to allow

> law enforcement to 'go after' the first link in a chain which results in a plentiful supply of firearms for use in violent crime. We do not believe that Congress intended to insulate from punishment dealers such as [defendants] who knowingly participate in an illegal gun trafficking scheme that puts hundreds of firearms in the hands of Chicago gang members.

*Id.* at 936. While it remains a question whether the crimes charged against Defendants here encompass such grievous conduct as in *Al–Muqsit*, both *Choice* and *Al–Muqsit* allow the government to proceed with felony charges against Defendants.

## IV. CONCLUSION

Accordingly, relying on *Choice, infra* and the reasoning in *Al–Muqsit, infra,* the court finds that the government is not precluded by the operation of § (a)(3)(A) from charging defendants as felony accomplices under 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 2(a).

Accordingly, Defendants' motion to dismiss the indictment is denied.

IT IS SO ORDERED.

---

4. Defendants contend that *Al–Muqsit* was subsequently vacated by the Eight Circuit. While this is correct, the relevant portions of the opinion were reinstated by the Eighth Circuit in *United States v. Logan,* 210 F.3d 820, 823 (8th Cir.2000).