RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0349p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 03-1735/1736

PATRICK CARNEY (03-1735); SEAN CARNEY (03-1736),
*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 01-90036—Marianne O. Battani, District Judge.

Argued: June 15, 2004

Decided and Filed: October 8, 2004

Before: KRUPANSKY, RYAN, and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Ronald W. Chapman, CHAPMAN & ASSOCIATES, Bloomfield Hills, Michigan, for Appellants. Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Ronald W. Chapman, David B. Mammel, CHAPMAN & ASSOCIATES, Bloomfield Hills, Michigan, for Appellants. Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

KRUPANSKY, J., delivered the opinion of the court, in which RYAN, J., joined. COLE, J. (pp. 12-14), delivered a separate dissenting opinion.

_____

## OPINION

_____

KRUPANSKY, Circuit Judge. The defendants-appellants Patrick Carney ("Patrick") and Sean Carney ("Sean"), father and son respectively (collectively "the Carneys" or "the defendants"), both federally-licensed firearms dealers, have assailed their correlative jury convictions for multiple counts of (1) aiding and abetting the felonious utterance of knowingly false statements by customers in the defendants' firearms

transfer records (18 U.S.C. § 924(a)(1)(A)),[1] and (2) the felonious creation or maintenance of willful omissions and/or falsehoods in their firearms transaction records regarding the name, age, and place of residence of firearms purchasers (18 U.S.C. § 922(b)(5)).[2] The defendants have framed five separate assignments of error, each of which they have alleged to be individually sufficient to invalidate some or all of their convictions.

During all times pertinent to the subject prosecutions, the Carneys operated "Carney's Hunting and Shooter's Supply," a gun shop located in Warren, Michigan. Between February 17, 2000, and June 29, 2000, on at least nine distinct occasions, the Carneys sold automatic or semi-automatic handguns and rifles to David Johnson (a/k/a "Tone") ("Johnson"), who, as a previously-convicted felon, was a person legally prohibited from purchasing or possessing firearms having an interstate or foreign commercial nexus. 18 U.S.C. § 922(g)(1). However, each sale had ostensibly been made instead to a female companion of Johnson's, which unlawful weapons transfers were aided and abetted by the defendants via their willful acceptance and retention of fraudulent supporting documentation. During the course of his weapons-acquisition scam, Johnson used at least six different women as putative purchasers of firearms from the Carneys. Each of the "straw woman" purchasers had an unblemished criminal record and hence confronted no extraordinary legal restriction(s) on her liberty to purchase and/or possess firearms.

In each evidenced episode, Johnson adhered to an identical *modus operandi*. Initially, he would drive his selected female co-conspirator to the Detroit Police headquarters to enable her submission of a written application for the required arms permit. Johnson would assist the woman with the completion of that form. After securing the weapons permit in the woman's name, Johnson would transport her to the Carneys' gun store, where he would select one or more firearms for purchase in the absence of any

---

[1]The subject statute posits:

(a)(1) Except as otherwise provided in this chapter, whoever --

 (A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;
. . . .

shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1)(A).

[2]That enactment stipulates:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver --

 . . . .

 (5) any firearm or armor-piercing ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

18 U.S.C. § 922(b)(5). A "willful" violation of that proscription constitutes a felony. 18 U.S.C. § 924(a)(1)(D); *United States v. Choice*, 201 F.3d 837 (6th Cir. 2000).

Proof of a "willful" violation requires that the government produce a greater quantum of proof than that which would prove a mere "knowing" violation. Whereas a "knowing" violation may be evidenced by proof that the defendant actually knew the truth or falsity of the material fact(s) at issue, a "willful" violation must be supported by proof that the defendant knew both the pertinent fact(s) *and* understood the *illegality* of the pertinent charged conduct. *See Bryan v. United States*, 524 U.S. 184, 192-93 (1998).

participation by his feminine cohort. Instead, his accomplice would idly pass the time by, for example, playing with the store owners' pets, or smoking cigarettes while standing outside the storefront. After Johnson had selected his desired pieces, he would assist his companion with the completion of the legally-requisite ATF Form 4473.[3] In each instance, that document falsely identified the woman, over her signature, as the ultimate buyer of the firearm(s). However, Johnson negotiated the purchase price of each firearm; paid, in cash, for each of the weapons purchased; and personally carried each purchased specimen out of the defendants' store.

On November 29, 2001, a federal grand jury returned a thirty-nine count indictment against the Carney defendants, Johnson, and eight women; thirteen of those charges named the Carneys as alleged aiders and abettors in the making of false statements, violative of 18 U.S.C. § 924(a)(1)(A), by Johnson and his accomplices. The Carneys moved for dismissal of all charges against them, on the rationale that, as licensed firearms traders, they could not be charged under § 924(a)(1)(A), for alleged reasons examined below. The district court denied that motion. *See United States v. Johnson*, 210 F. Supp. 2d 889 (E.D. Mich. 2002). Subsequently, on July 18, 2002, the grand jury issued a superseding indictment which restated the thirteen § 924(a)(1)(A) counts against the Carneys, but which also superinduced six counts which alleged recordkeeping offenses under 18 U.S.C. § 922(b)(5) against Sean plus four similar counts against Patrick.

Following a jury trial which, on November 4, 2002, resulted in the defense-friendly disposition of ten of the twenty-three counts stated against the Carneys via either "not guilty" verdicts or dismissals of counts by the district court as a matter of law for the insufficiency of supporting trial evidence, the Carneys proceeded to their second jury trial on the thirteen remaining counts against them (each of which had been the subject of a mistrial ruling in the initial trial forum). On March 6, 2003, the second jury convicted Sean on three counts which had alleged violations of § 924(a)(1)(A), and three additional counts which had stated offenses under § 922(b)(5);[4] and it convicted Patrick on four charges of § 924(a)(1)(A) violations plus four counts undergirded by § 922(b)(5).[5] Ultimately, the trial court sentenced Sean to six concurrent twenty-

---

[3] Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms ("ATF") Forms 4473 (Firearms Transaction Records) are official records of the over-the-counter transfer of ownership title to firearms. A portion of that form must be completed by the buyer/transferee, and the remaining part should be completed by the licensed seller/transferor. The seller must retain that completed Form 4473 within its business records. *See* 18 U.S.C. § 923(g).

[4] The jurors convicted Sean Carney of three charges anchored in 18 U.S.C. § 924(a)(1)(A), namely Count 6 (aiding and abetting the making of false statements by Johnson and Sonya Stinson on an ATF Form 4473 on approximately February 25, 2000, to facilitate Johnson's illegal purchases of one Magnum Research nine millimeter pistol, one HiPoint nine millimeter handgun, and one Hungarian-produced AK-47 semi-automatic rifle); Count 15 (aiding and abetting the making of false statements by Johnson and Sheritha Cray on approximately March 8, 2000, to enable Johnson's unlawful acquisition of two Romanian-origin AK-47 semi-automatic rifles); and Count 24 (aiding and abetting the making of false statements by Johnson and Tonya Stinson on approximately March 10, 2000, to support Johnson's surreptitious purchases of two Intratec nine millimeter handguns plus one HiPoint nine millimeter rifle). In addition, Sean was convicted of three recordkeeping offenses outlawed by 18 U.S.C. § 922(b)(5), to wit, Count 41 (failure to record the correct name, age, and residence of the purchaser of one HiPoint nine millimeter handgun, one Magnum Research nine millimeter pistol, and one Hungarian-fabricated AK-47 semi-automatic rifle on February 25, 2000); Count 43 (failure to record the correct name, age, and residence of the purchaser of two Romanian-assembled AK-47 semi-automatic rifles on March 8, 2000); and Count 44 (failure to record the correct name, age, and residence of the purchaser of two Intratec nine millimeter handguns plus one HiPoint nine millimeter rifle on March 10, 2000).

[5] The four counts stated under § 924(a)(1)(A) on which Patrick Carney sustained convictions were Count 21 (aiding and abetting the making of false statements by Johnson and Mahogany Mitchell on an ATF Form 4473 on approximately March 2, 2000, to enable Johnson's unlawful purchase of one Kel-Tec nine millimeter handgun and one Intratec nine millimeter handgun); Count 27 (aiding and abetting the making of false statements by Johnson and Tonya Stinson on an ATF Form 4473 on approximately June 29, 2000, to facilitate Johnson's illegal purchases of one Intratec nine millimeter handgun plus one FEG AK-47 semi-automatic rifle); Count 33 (aiding and abetting the making of false statements by Johnson and Eboni Harmon on an ATF Form 4473 on approximately June 1, 2000, to advance Johnson's felonious purchases of two Intratec nine millimeter handgun and one Romanian-made AK-47 semi-automatic rifle); and Count 36 (aiding and abetting the making of false statements by Johnson and Mary Marshall on approximately June 2, 2000, to further Johnson's illicit acquisitions of one Kel-Tec .40 caliber handgun plus one Jennings nine millimeter pistol). The jurors also convicted Patrick on four counts buttressed by § 922(b)(5),

seven-month terms of imprisonment, and imposed eight concurrent eighteen-month incarceration periods against Patrick.  Following release from penal confinement, each defendant shall be supervised for two years.

As their initial alleged rationale for reversal of their convictions, the defendants have protested that the government erred, as a matter of law, by proceeding against them under section 924(a)(1)(A), a felony statute which, according to the defendants, should apply only against the *maker(s)* of knowingly false material statements *to a firearms seller* for inclusion within the seller's legally-required transaction records, but which, allegedly by the negative implication of its facial terms, cannot apply against the seller himself.[6] *See* note 1 above.  Instead, the defendants have argued that, because they were *licensed arms dealers*, the United States should have instead prosecuted them under 18 U.S.C. § 924(a)(3)(A), a misdemeanor rule which provides:

> (a)(3)  *Any licensed dealer*, licensed importer, licensed manufacturer, or licensed collector who knowingly --
>
> (A) *makes any false statement or representation with respect to the information required* by the provisions of this chapter *to be kept in the records of a person licensed under this subchapter . . .*
>
> shall be fined under this title, *imprisoned not more than one year*, or both.

18 U.S.C. § 924(a)(3)(A).  (Emphases added).

However, contrary to the defendants' contention, the interplay of § 924(a)(1)(A) and § 924(a)(3)(A), respectively, does *not* pose an instance whereby general statutory language is entirely superseded by specific statutory terms which address a precise matter.  *Cf. Edmond v. United States*, 520 U.S. 651, 657 (1997). Although countless instances undoubtedly exist wherein a defendant legitimately could be charged only under one section in controversy or the other, but not either in the alternative nor both, such a circumstance is *not* presently framed herein.  Accordingly, this appellate court need not resolve the full and/or exclusive reach of either statutory section in controversy.  Rather, the defendants' conduct alleged in the § 924(a)(1)(A) counts of conviction could have sustained convictions under *either*, or *both*, referenced sections.[7]

---

namely Count 46 (failure to record the correct name, age, and residence of the purchaser of two Intratec nine millimeter handguns on March 2, 2000); Count 47 (failure to record the correct name, age, and residence of the purchaser of a Romanian-manufactured AK-47 rifle and two Intratec nine millimeter pistols on June 1, 2000); Count 48 (failure to record the correct name, age, and residence of the purchaser of one Kel-Tec .40 caliber handgun plus one Jennings nine millimeter handgun on June 2, 2000); and Count 49 (failure to record the correct name, age, and residence of the purchaser of an Intratec nine millimeter pistol plus an FEG AK-47 rifle on June 29, 2000).

[6] The trial court rejected that legal contention.  *United States v. Johnson*, 210 F. Supp. 2d 889 (E.D. Mich. 2002). The lower court's construction of a statute, like any ruling of law, is subject to *de novo* review.  *United States v. Ninety Three Firearms*, 330 F.3d 414, 420 (6th Cir. 2003).

[7] *See United States v. Al-Muqsit*, 191 F.3d 928, 935 (8th Cir. 1999) ("There is simply nothing in the language or legislative history of the statute [§ 924(a)(3)] or legislative history [sic] to indicate Congress intended to do anything more than allow for **the option** of misdemeanor prosecution for licensed dealers who make false statements on ATF forms, *while leaving intact the felony prosecution structure for those* such as Michels and Kimpton *whose flagrant and repeated actions in accepting false ATF forms from straw purchasers* and backdating ATF forms to avoid notification requirements *warrants felony punishment.*") (emphases added), *vacated in part on other grounds sub nom. United States v. Logan*, 210 F.3d 820 (8th Cir.) (*en banc*), *cert. denied*, 531 U.S. 1053 (2000).  "Without the option of charging dealers under the felony provisions of § 924, it would be impossible for law enforcement to 'go after' the first link in a chain which results in a plentiful supply of firearms for use in violent crime. *We do not believe that Congress intended to insulate from punishment dealers* such as Michels and Kimpton *who knowingly participate in an illegal gun trafficking scheme* that puts hundreds of firearms in the hands of Chicago gang members."

However, the government elected to proceed under § 924(a)(1)(A), to the exclusion of § 924(a)(3)(A). *See United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) (instructing that where a defendant's conduct offended more than one statute, federal authorities may prosecute him under any or all such enactments); *United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir. 1983) (explaining that, where a defendant's alleged conduct satisfied the elements of both a misdemeanor and a felony offense, the United States Attorney was "free to prosecute under any applicable statute without regard to which statute is more specifically tailored to the facts alleged. . . . There is no general rule of lenity which requires the government to forego a felony prosecution simply because a misdemeanor statute may also be applicable.") (citations omitted). In the case *instanter*, record proof supportive of each pertinent § 924(a)(1)(A) count of conviction revealed that Johnson and his named female accomplice had made material misrepresentations of fact on the official Form 4473, which the defendant seller knew to be false, and which false data was willfully retained in the Carneys' legally required transaction records.

Accordingly, the trial proof supported the jury's finding that, as charged in the superseding indictment, the Carneys had "aided and abetted" Johnson and his feminine cohorts in their section 924(a)(1)(A)-proscribed plot to purchase firearms by submitting fraudulent data on the Forms 4473. *See* 18 U.S.C. § 2(a) ("*Whoever* commits an offense against the United States or *aids, abets*, counsels, commands, induces or procures *its commission*, *is punishable as a principal*.") (Emphasis added). The record evidence compellingly demonstrated that the defendant gun dealers knowingly, willfully, actively, and repeatedly collaborated with a convicted felon's ongoing unlawful conspiratorial scheme, by means including their willful acceptance of fraudulent official documentation, which exposed them to "*accomplice*" felony liability under 18 U.S.C. §§ 2 & 924(a)(1)(a); hence, the government clearly was not constrained to instead prosecute the Carneys only under the section 924(a)(3)(A) misdemeanor rule, *even if* § 924(a)(1)(A) does not *independently* apply to fabrications of material misinformation by firearms dealers on official transfer documents.

Thus, the district court correctly rejected the defendants' motion to dismiss the § 924(a)(1)(A) counts, because those counts properly charged the Carneys with having *aided and abetted* the felonious frauds *committed by Johnson and his accomplices* in the completion of legally required firearms transfer records.

---

*Al-Muqsit*, 191 F.3d at 936. (Emphases added). Although the gun distributors in *Al-Muqsit* were charged, together with their lawbreaking customers, with *conspiracy* to violate § 924(a)(1)(A), the circuit court's language suggested that the firearms sellers could have been independently charged with § 924(a)(1)(A) offenses. *See id*. at 935-36.

The *en banc* Eighth Circuit in *Logan* partially vacated the panel's ruling in *Al-Muqsit* by reason of that panel's erroneous constitutional "confrontation" ruling which had invalidated the conviction of Al-Muqsit's co-defendant Logan. Nevertheless, nothing contained in the *en banc* decision detracted from the persuasive reasoning of the panel's ruling that a licensed firearms vendor who knowingly collaborated with the falsification of official records by a customer may be prosecuted as a co-conspirator in the commission of § 924(a)(1)(A) felony offenses, rather than merely prosecuted as a licensed vendor who created or maintained knowingly false records in violation of the misdemeanor provisions of § 924(a)(3)(A). Indeed, the *en banc* Eighth Circuit in *Logan* expressly mandated: "We also reinstate the earlier panel opinion to the extent that it is not inconsistent with this opinion." *Logan*, 210 F.3d at 823. Although the Sixth Circuit is not bound by *stare decisis* to adhere to the prior ruling of any sister circuit, this court nonetheless finds the relevant analysis and conclusion of the *Al-Muqsit* opinion, which was adopted by the *en banc* Eighth Circuit via *Logan*, to be persuasive. *See also United States v. Abfalter*, 340 F.3d 646, 653-54 (8th Cir. 2003) (following *Al-Muqsit*), *cert. denied*, __ U.S. __, 124 S. Ct. 1112 (2004); *United States v. Rietzke*, 279 F.3d 541, 545-47 (7th Cir. 2002); *United States v. Jarvouhey*, 117 F.3d 440 (9th Cir. 1997).

The principal legal authority invoked by the Carneys in support of their argument that they should have been tried and sentenced as misdemeanor offenders under § 924(a)(3)(A) rather than aiders-and-abettors of felony offenses under § 924(a)(1)(A) was the noncontrolling out-of-circuit inferior court edict issued in *United States v. Wegg*, 919 F. Supp. 898 (E.D. Va. 1996). This reviewing court concludes that the *Wegg* decision was poorly reasoned and is inconsistent with all published circuit court authority on the matter; thus this court will assign it zero persuasive weight. The Carneys have also touted *United States v. Hunter*, 843 F. Supp 235 (E.D. Mich. 1994), another noncontrolling lower court decision, which in fact did not address the issue of accomplice liability under § 924(a)(1)(A) for licensed firearms dealers; thus it offered no pertinent analytical guidance regarding the question at bench.

Next, the Carneys have argued that if they were properly convicted as "aiders and abettors" of their customers' fraudulent representations under § 924(a)(1)(A), then their associated convictions under § 922(b)(5) were invalid, either (1) because an alleged fatal inconsistency inhered in the jury verdicts in that the defendants purportedly could not be simultaneously guilty of *both* aiding and abetting the creation of *false* records, and of *not maintaining* the legally required records relative to the same transactions; or (2) because the evidence supporting their § 922(b)(5) convictions was averredly insufficient in that the record reflected that ATF Forms 4473 memorialized each subject transaction (albeit with falsified data regarding the buyer's identity), whereas § 922(b)(5) allegedly requires the absence of *any* record of the buyer's name, age, and residence.  However, because the defendants have misconstrued the meaning of § 922(b)(5), neither assault withstands critical examination.

The defendants' attack against their § 922(b)(5) felony convictions was anchored in *United States v. Choice*, 201 F.3d 837 (6th Cir. 2000), wherein the Sixth Circuit distinguished § 924(a)(3)(A) (the statute which assigned misdemeanor liability to a licensed firearms dealer who knowingly made a false representation in his transaction records) from § 922(b)(5) (the basic statute which created liability for a licensed armaments trader who failed to maintain a record of the name, age, and place of residence of the buyer of firearms, which the *Choice* court further found to be punishable as a felony under § 924(a)(1)(D) where that transgression had been "willful.").  *See Choice*, 201 F.3d at 840 ("The plain language of this statute indicates that § 924(a)(1)(D) governs Choice's offense, and therefore the district court correctly found that Choice had pleaded guilty to a felony.  By its terms, § 924(a)(3)(A) clearly applies only to licensed dealers who make false statements in connection with firearms sales, and not to those who fail to keep any records at all.  Furthermore, § 924(a)(3)(A) refers only to knowing offenses and therefore implicitly excludes Choice's willful violation from its scope.").  (Citations omitted).

Choice had failed to maintain *any* record of the sale of a charged firearm, although he knew that he was required by law to maintain a record.  *Id*. at 838.  Following his guilty plea to a § 922(b)(5) count, Choice unsuccessfully argued that the § 924(a)(3)(A) misdemeanor proviso should be construed to control the punishment of *all* record-keeping offenses by a licensed firearms distributor, including offenses under § 922(b)(5).  *Id*. at 839-42.  However, because Choice had admitted in his plea agreement to a "willful" violation of § 922(b)(5)'s proscription against failing to keep records of the name, age, and address of a buyer, which in turn triggered the felony penalty provision of § 924(a)(1)(D), the Sixth Circuit sustained Choice's *felony* conviction under § 922(b)(5).

Accordingly, the *Choice* court resolved that felony liability will be available against a licensed firearms dealer who *willfully* fails to maintain the records required by § 922(b)(5); whereas only misdemeanor liability can burden a licensed firearms dealer who has merely *knowingly* maintained sales records containing false information per § 924(a)(3)(A).  Significantly, the issue whether a licensed firearms dealer's willful neglect to record on a completed ATF Form 4473 the *correct* name, age, and residential address of the buyer – that is, his willful recordation and retention of *false* material information as opposed to no information at all –  can qualify as a § 922(b)(5) violation for failure to maintain a record of that information, as opposed to a § 924(a)(3)(A) offense for merely knowingly maintaining a false record of sales information, was not directly posed before the *Choice* court.  Accordingly, any language contained in *Choice* which might be construed to support either possible construction of the interplay of the two statutes must be regarded as mere noncontrolling dictum.

By contrast, the Seventh Circuit squarely addressed the issue in controversy in *United States v. Rietzke*, 279 F.3d 541 (7th Cir. 2002).  In that prosecution, defendant Rietzke, a federally licensed firearms dealer, had sold a firearm to a convicted felon through a female straw purchaser.  Those customers *completed the required transaction form* by, among other things, *falsely listing the straw buyer's name, age, and address as that of the purchaser*.  The defendant willfully retained that false document in his business records.  *Id*. at 542-43.  The defense argued (unsuccessfully) that Rietzke could be prosecuted *only* under § 924(a)(3) for the *misdemeanor* of knowingly maintaining a false transaction record, but *not* for the § 922(b)(5) *felony* of willfully failing to record the name, age, and address of the buyer.  *See id*. at 543.  The

Seventh Circuit *rejected* that argument, resolving, among other things, "that when multiple criminal statutes apply to the same conduct, the prosecutor has the discretion to choose under which statute to proceed." *Id*. at 545 (*citing United States v. Batchelder*, 442 U.S. 114 (1979)). "In this case, the prosecution in the exercise of her prosecutorial discretion chose to charge Rietzke under the felony provision of the statute and not the misdemeanor provision, and it was within her discretion to do so." *Id*. at 546.

The *Rietzke* court further pronounced that "[n]othing in § 924(a)(3) suggests that it is the sole provision under which a licensed firearms dealer could be charged." *Id*. at 546. Rather, a fair reading of §§ 924(a)(3) and 922(b)(5) in tandem revealed a Congressional intent to permit prosecutors the *option* of prosecuting licensed firearms dealers who have willfully failed to record the correct name, age, and address (either by complete omission *or* by the substitution of false information) under §§ 922(b)(5) and 924(a)(1)(D) (the felony provisions), *or* for knowingly retaining false records under § 924(a)(3)(A) (the misdemeanor statute). *Id*. at 546.

The instant reviewing court concludes that the Seventh Circuit's analysis and ruling in *Rietzke* were persuasive, and thus this court hereby adopts it. Whereas, as regarding the relationship between §§ 924(a)(1)(A) and 924(a)(3)(A) evolved above, situations undoubtedly will exist wherein a defendant could only be properly prosecuted under either § 924(a)(3)(A) or § 922(b)(5), but not either in the alternative nor both, such a circumstance was *not* posed in the cause *sub judice*. Rather, the instant proof of record could have supported convictions under either, or both, statutes. At bottom, the mere fact that the Carneys willfully accepted, and maintained in their records, *incorrect* information regarding the name, age, and address of the buyer of certain firearms, as opposed to simply failing to record *any* information on those subjects in their transaction records, is an immaterial distinction. The plain language of § 922(b)(5) covers *both* scenarios, in that a licensed dealer's willful recordation of false data, instead of the accurate data, is both the moral and the functional equivalent of the willful recordation of no information at all regarding the legally required matters. *See* 18 U.S.C. § 922(b)(5).

Accordingly, the record evidence supporting the Carneys' § 922(b)(5) convictions was sufficient, because, as developed above, the prosecution was not restricted on the subject record to proceeding against the defendants only under § 924(a)(3)(A) for their willful record-keeping failures. Likewise, no fatal inconsistency was manifested by the jury verdicts which found the defendants liable for the § 922(b)(5) felonies of willfully failing to transcribe complete, accurate, and truthful information about the name, age, and address of the buyer of certain firearms; and which concomitantly found them guilty of aiding and abetting their customer's § 924(a)(1)(A) felonious provision of knowingly false information for inclusion in the defendants' sales transaction records.

Thirdly, the defendants have assailed the trial court's "deliberate ignorance" jury instruction, which had tracked nearly verbatim the Sixth Circuit's Pattern Jury Instruction 2.09 ("Deliberate Ignorance").[8] The Sixth Circuit has endorsed Pattern Jury Instruction 2.09 as a correct summation of the governing law, which forecloses the risk that a jury might convict on the basis of negligent failure to know rather than virtual

---

[8] The "deliberate ignorance" charge read to the jurors stated:

(1) Next, I want to explain something about proving a defendant's knowledge:

(2) No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that defendants Sean Carney and Patrick Carney deliberately ignored a high probability that David Johnson was the actual buyer of the firearms named in the indictment, then you may find that they knew that David Johnson was the actual buyer of those firearms.

(3) But to do this, you must be convinced beyond a reasonable doubt that the defendants were aware of a high probability that David Johnson was the actual buyer of the firearms, and that the defendants deliberately closed their eyes to what was obvious. Carelessness, or negligence, or foolishness on defendants' part is not the same as knowledge, and is not enough to convict. This, of course, is all for you to decide.

knowledge. *See United States v. Mari*, 47 F.3d 782, 785 (6th Cir. 1995). Nonetheless, although a jury charge might be a correct statement of the law, a trial court's election to give that instruction is examined by a reviewing court for abuse of discretion,[9] because even a facially correct instruction may, in the light of record proof, the totality of the jury charges, or other circumstances of the case, be incomplete, misleading, confusing, or otherwise prejudicial. *See United States v. Beaty*, 245 F.3d 617, 621-22 (6th Cir. 2001) (directing that the trial court's recitation of a legally-correct "deliberate ignorance" charge which was not supported by the case evidence constituted an abuse of discretion; however, that error was ultimately harmless) (*citing Mari, supra*); *Innes v. Howell Corp.*, 76 F.3d 702, 714 (6th Cir. 1996).

Conversely, even a legally-erroneous jury charge will not justify reversal of a conviction if its probable effect on the verdict was inconsequential. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) ("We will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless."). No trial error, including an erroneous jury instruction, will compel reversal of a conviction unless the defendant(s) can prove "either that the alleged misconduct [or error] was inherently prejudicial or that it caused actual prejudice." *United States v. Barger*, 931 F.2d 359, 371 (6th Cir. 1991). "Absent proof or documentation of prejudice, we do not assume that prejudice occurred." *United States v. Maxwell*, 160 F.3d 1071, 1077 (6th Cir.1998). When assessing a trial error's potential prejudicial impact, the appellate court "must take account of what the error meant to them [the jurors], not singled out and standing alone, but in relation to all else that happened." *Kotteakos v. United States*, 328 U.S. 750, 764 (1946). *See also United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993) (instructing that the defendant must prove that "it is more probable than not that the error materially affected the verdict.").

The Carneys have protested that the presiding lower court judge had abused her discretion to their prejudice by instructing the jury on "deliberate ignorance" because no *direct* proof had been admitted of either defendant's actual knowledge that Johnson was the actual buyer of the charged firearms. That assignment of error was facially ill-formulated. The plain language of the pattern instruction authorizes a jury to find "knowledge" based upon *circumstantial* proof which compels the conclusion that the defendant(s) *must have known* the fact at issue because it was "obvious" – *as opposed to* having merely been negligent by failing to discover or realize the subject fact which they *should have known*.

By contrast, if direct proof existed that the defendants had known that Johnson was the actual buyer of the weapons, no need for any "deliberate ignorance" instruction would have arisen. In all events, the defendants have furnished no proof, other than speculation, conjecture, empty hypothesizing, creative guesswork, and wishful thinking, to conclude that the jurors did not follow the clear letter of the "deliberate ignorance" charge, or were in any way confused or misled. *See Barnes*, 201 F.3d at 822 ("Federal courts generally presume the jury will follow the instructions correctly as given."); *Mari*, 47 F.3d at 785-86 (expounding that courts will not assume that jurors neglected to follow the legally-correct instructions read to them).

Furthermore, even assuming *arguendo* that some possibility of juror confusion or misunderstanding inhered in the faulted charge, no actual prejudice to the Carneys resulted. The record proof reflected beyond contradiction that the Carneys knew precisely what Johnson was doing. The jury unanimously found, beyond a reasonable doubt, that Patrick had consummated at least four transactions with Johnson and four different women between March 2 and June 2, 2000; and that Sean had closed at least three deals with Johnson and three different women between February 25 and March 10, 2000. Johnson followed the identical, highly incriminating *modus operandi* on each occasion, including assuming exclusive control over selecting, paying for, and carrying out the firearms he wanted, and aiding his female confederate in the fraudulent completion of the ATF declaration.

---

[9]An abuse of discretion occurs "when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses [an] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995) (quotation marks and citations omitted).

In light of those facts, the conclusion was inescapable that any rational person, let alone an experienced licensed firearms merchant, would have *known* that Johnson was the true buyer of the weapons. Patently, the defendants would have been convicted with or without the "deliberate ignorance" instruction. Moreover, any rational and lucid jury would have found, on the subject record, that the Carneys either knew that Johnson was the actual buyer of the guns or had been deliberately ignorant of that fact, even if the jury at issue had erroneously misunderstood the instruction by concluding that they needed only to find that the Carneys had negligently failed to understand what they "should have known" about Johnson's ruse.[10] Accordingly, any unwarranted adverse impact which the "deliberate ignorance" instruction may have had on the defense case was ultimately harmless.

Fourthly, the defendants have contended that the trial court prejudiced their defense by allowing the United States, over their opposition, to introduce Fed. R. Evid. 404(b) evidence of similar transactions between the Carneys and Johnson which had been the subjects of dismissed counts or counts of acquittal at the defendants' initial trial. The prosecution had proffered that evidence as proof that the Carneys knew that Johnson was the actual purchaser of the charged firearms, and as proof of a common plan or scheme and consistent *modus operandi* executed by the defendants and Johnson.[11]

A district judge's allowance of Rule 404(b) evidence is reviewed for abuse of discretion. *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001) (*citing General Electric v. Joiner*, 522 U.S. 136, 142-43 (1997); *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999)). The trial jurist's admissibility assessment of proffered Rule 404(b) evidence should proceed as follows:

> First, the trial court must ascertain whether the proffered evidence is relevant and admissible for a proper purpose. *United States v. Zelinka*, 862 F.2d 92, 98 (6th Cir.1988). To be relevant, "the evidence must relate to a matter which is 'in issue,' and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985) (citations omitted). To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, "whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S. Ct. 1496, 1499 (1988).

> Finally, the court must determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *Huddleston*, 485 U.S. at 687, 108 S. Ct. at 1500. The district court has broad discretion in balancing

---

[10] The Carneys have also averred that the "deliberate ignorance" jury charge had prejudiced them because it authorized the jurors to find, in the absence of direct proof, that the defendants had known that Johnson was a convicted felon precluded from the lawful acquisition or possession of firearms. However, whether or not they knew that Johnson was a convicted felon was irrelevant, as knowledge of that fact was not an element of either the § 924(a)(1)(A) counts of conviction nor of the § 922(b)(5) charges of conviction. To the contrary, the respective defendant's knowledge that Johnson, rather than his female cohort, was the actual buyer of the subject firearm(s) was sufficient to prove his knowledge of the falsity of the implicated ATF Form 4473, which in turn was the key material fact buttressing each count against either defendant.

[11] The operative rule posits:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, *knowledge*, *identity*, or *absence of mistake* or accident[.]

Fed. R. Evid. 404(b) (emphases added).

"This [Rule 404(b)] is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified. The list of permissible uses is not exclusive. Courts have recognized other permissible uses of such evidence; for example, to show a *common scheme or plan*." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) (emphasis added; citations omitted).

probative value against potential prejudicial impact. *United States v. Dabish*, 708 F.2d 240, 243 (6th Cir.1983). We review a district judge's balancing of prejudicial impact and probative value under Fed. R. Evid. 404(b) under an abuse of discretion standard. *United States v. Holloway*, 740 F.2d 1373, 1377 (6th Cir.), *cert. denied*, 469 U.S. 1021, 105 S. Ct. 440, 83 L. Ed. 2d 366 (1984).

*United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991).

The Carneys have assailed the lower court's evidentiary ruling at its final analytic stage, to wit, that the faulted evidence's probative value substantially outweighed its potential unfair prejudicial impact upon the defense. "A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1991) (citation omitted). "If judicial self-restraint is ever desirable, it is when a Rule 403 [prejudicial effect] analysis of a trial court is reviewed by an appellate tribunal." *United States v. Zipkin*, 729 F.2d 384, 390 (6th Cir. 1984) (citation omitted). In conducting review of a rejected "undue prejudice" objection, the Sixth Circuit "look[s] at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Id*. at 389 (citations omitted).

The trial adjudicator's judgment that the probative worth of the evidence in controversy substantially outweighed any possible risk of unfair prejudice to the Carneys, when examined under prevailing deferential review standards, was patently sustainable. Contrary to the defendants' posture, the Rule 404(b) proof was not merely repetitive and cumulative of evidence already in the record concerning transactions between them and Johnson; rather, it supplied valuable probative instances of additional similar transactions, which were crucial to the government's proof that the Carneys actually knew that Johnson was the true purchaser of the charged firearms.

The Carneys' averment that the admission of the faulted evidence may have exposed them to double jeopardy regarding transactions which had been the subjects of counts of dismissal or acquittal at their initial trial was sheer speculation, as they have offered no proof that any juror was motivated to convict by a desire to punish the defendants for an uncharged transaction. In all events, the government need not prove probative "other acts" beyond a reasonable doubt; rather, that proof must merely be sufficiently compelling such that "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Dowling v. United States*, 493 U.S. 342, 348 (1990). Consequently, evidence of an act which had been the subject of a count of acquittal in a prior criminal trial is admissible in a subsequent prosecution as Rule 404(b) evidence if, as in the case *sub judice*, that evidence passes the *Dowling* "factual reliability" test. *Id*. at 349.

Sean Carney has complained that evidence of June 2000 transactions with Johnson unduly prejudiced him because his final crime of conviction occurred on March 10, 2000; thus, he has claimed, the June 2000 events could not have been probative of his pre-March 10, 2000 knowledge. However, Rule 404(b) expressly permits the admission of relevant "other acts," *not merely* "prior acts." The Carneys' post-March 10, 2000 commerce with Johnson was material and probative of their shared *modus operandi* and common plan or scheme, in that proof that the parties continued to adhere to the identical pattern *after* March 10, 2000 as that which they had followed *prior* to that date tended to prove that that pattern had been implicitly or explicitly agreed upon at some point prior to March 10, 2000.

Furthermore, Sean has not claimed that he had requested any limiting jury instruction whereby the trial bench might have charged the jurors to restrict the Rule 404(b) evidence as against him. In all events, even if the trial judge had abused her discretion by admitting any or all of the Rule 404(b) evidence (which she did not), that error would have been ultimately harmless, in light of the independent overwhelming proof of record supportive of the defendants' convictions. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

Fifthly, and finally, the Carneys have claimed, for the first time on review, that the trial court erred to their prejudice by failing *sua sponte* to exclude evidence allegedly tainted by a suggestive "photographic identification" procedure. Prior to trial, ATF investigators displayed photographs of the Carneys to each woman employed by Johnson as a "straw purchaser." Those images were not part of any larger photo array or "photographic lineup," but rather were presented in stand-alone "photographic show-up" fashion. Each witness identified one or the other of the Carneys as the seller of guns to Johnson on a particular occasion. At trial, each of those women identified one the Carneys as the seller of various charged firearms. During cross-examination, each of those female witnesses described the pre-trial photo display.

Normally, a reviewing court scrutinizes a contested evidentiary ruling for abuse of discretion. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993) (citation omitted). However, the Carneys failed to preserve any opposition in the trial court to the admission of the women's identifications of them as the gun sellers by reason of any purported taint caused by an unduly suggestive procedure. *See Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). When a defendant neglects to mount an objection to evidence at trial, he is precluded from arguing on appeal that its admission was flawed unless its allowance constituted plain error.[12] *See, e.g., United States v. Combs*, 369 F.3d 925, 938 (6th Cir. 2004) (citation omitted). "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Krimsky*, 230 F.3d 855, 858 (6th Cir. 2000) (citation omitted), *cert. denied*, __ U.S. __, 124 S. Ct. 1422 (2004). The "plain error" doctrine "is to be used sparingly, only in exceptional circumstances and solely to avoid a miscarriage of justice." *United States v. Hook*, 781 F.2d 1166, 1172 (6th Cir. 1986) (citations omitted). A reviewing court should apply the "plain error" doctrine to "reverse only if errors were so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989).

Manifestly, the Carneys cannot satisfy that exacting standard of proof in the instant appeal. No possibility of misidentification existed. *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977) ('reliability is the linchpin in determining the admissibility of identification testimony[.]"); *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986). Each transaction charged in a count of conviction was memorialized by an ATF Form 4473 which identified either Sean or Patrick Carney as the seller of the implicated weapon(s). Moreover, every in-court eyewitness identification harmonized with the ATF Form as to the identity of the pertinent salesman. In addition, the eyewitness identifications were inherently reliable, even standing alone, by reason of the extended opportunity that each woman had to observe the firearms seller; the "high-impact" nature of the event; and the relative temporal proximity of the events to the testimony (approximately two and one-half years). *See Manson*, 432 U.S. at 114; *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Thigpen*, 804 F.2d at 895; *United States v. Hamilton*, 684 F.2d 380, 383 (6th Cir. 1982).

Hence, the district judge did not plainly err by failing *sua sponte* to disallow identification testimony by any eyewitness. Furthermore, even if the defendants had properly preserved an opposition to that evidence, the admission thereof would not have constituted an abuse of discretion.

Accordingly, each of the defendants' five assignments of trial error was misconceived. The convictions of the defendants are **AFFIRMED.**

---

[12] *Any* forfeited (unpreserved) assignment of error is reviewed for "plain error." *United States v. Page*, 232 F.3d 536, 543-45 (6th Cir. 2000). The Sixth Circuit has explained:

> Where there has been no objection, review is for plain error. Fed. R. Crim. P. 52(b). We cannot correct an error pursuant to Rule 52(b) unless there is an "error" that is "plain" or "clear" under current law and that affects substantial rights. If these conditions are met, we may exercise our discretion and notice the error only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*Id*. at 543-44 (citations and brackets omitted). *See also United States v. Cotton*, 535 U.S. 625, 631-32 (2002).

---

**DISSENT**

---

R. GUY COLE, JR., Circuit Judge, dissenting. The Carneys falsified paperwork in connection with their sales of firearms to a convicted felon. They were not convicted of falsifying paperwork in connection with their sales of firearms, however; they were convicted of (1) aiding-and-abetting the buyer's falsification of paperwork; and (2) failing to complete the required paperwork.

In a purely literal sense, the Carneys could be said to have aided and abetted the buyer's falsification of the records. But under this view, virtually every instance in which a licensed gun-seller knowingly fudges his records to facilitate an otherwise illegal sale, a (misdemeanor) violation of § 924(c), will also constitute aiding or abetting a non-seller in doing so, a (felony) violation of § 924(a). The only situation in which § 924(c) is not superfluous is when the seller *sua sponte* falsifies the record, with no input from the buyer. This is likely to be an infinitesimal subset of cases, given that the record-keeping requirements function mainly to limit the universe of gun purchasers, and that gun dealers have little reason to fabricate the identity of their buyers unless their buyers want or need their identities fabricated. Thus, under the majority's reading, § 924(c) would become practically superfluous. However, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation and quotations omitted).

The Government's response, seemingly adopted by the majority, is that the duplicate provisions merely allow the Government to choose between charging the dealer with a felony or charging the dealer with a misdemeanor. This explanation—articulated by the Eighth Circuit in *Al-Muqsit*—falls flat on two levels. The court in *Al-Muqsit* surmised that Congress "allow[ed] for the option of misdemeanor prosecution for licensed dealers who make false statements on ATF forms, while leaving intact the felony prosecution structure for those . . . whose flagrant and repeated actions in accepting false ATF forms from straw purchasers . . . warrants felony punishment." *Al-Muqsit*, 191 F.3d at 935. But the aim of Congress—to treat knowing violations more seriously than unintentional violations—was accomplished by the statute's elimination of strict liability; a requirement that the falsification occur "knowingly" is now a component of both the felony *and* misdemeanor provisions. An "innocent" dealer could not be convicted even under § 924(c), because that dealer's transcription error or honest mistake would not have been made "knowingly." The elimination of liability for innocent, careless or negligent mistakes also eliminates any reason that Congress might have allowed the Government to "choose" between felony and misdemeanor liability for identical conduct.

Even if Congress wanted to punish certain types of "knowing" falsification by federally licensed dealers more severely than other types of "knowing" falsification by federally licensed dealers, the aiding or abetting mechanism would have been an extremely awkward and indirect means of doing so. Congress could have written: "Any federally licensed dealer who knowingly falsifies a record in connection with the sale of a firearm may be prosecuted for either a felony or a misdemeanor." Instead, under the majority's reading, "the direct method [of liability] would call for a misdemeanor, while the indirect method [of liability] would call for a felony." *Wegg*, 919 F. Supp. at 906. In other words, the majority's interpretation presumes that Congress tried to do indirectly what it could easily have done directly. The Supreme Court, however, has repeatedly refused "to assume that Congress chose a surprisingly indirect route to convey an important and easily expressed message." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 262 (1994). *See also Dowling v. United States*, 473 U.S. 207, 226 (1985) ("The Government . . . presumes congressional adoption of an indirect but blunderbuss solution to a problem treated with precision when considered directly.").

The third and final strike against the majority's reading of the statute is the well-established common-law exception to aider-or-abettor liability, which is routinely applied to crimes in which, for lack

of a better description, it takes two to tango. As the Model Penal Code explains, accomplice liability does not extend to conduct that is "inevitably incident" to the main offense. Thus, someone who merely buys heroin for personal use cannot be charged with aiding or abetting the distribution of heroin; a fourteen-year old who consents to sex with a forty-year old cannot be charged with aiding or abetting statutory rape; and a prostitute who sells her services to a client cannot be charged with aiding or abetting the solicitation of prostitution. In our case, § 924(a) and § 924(c) deal almost inevitably with two sides of the same coin: a seller knowingly accepts falsified paperwork from a buyer who knowingly falsifies the paperwork. To punish the former for aiding or abetting the latter is redundant.

Indeed, the federal courts have routinely imbued federal criminal statutes with this common-law exception to accomplice liability; were the majority to do so here, it would have no choice but to conclude that the Carneys were prosecuted under the wrong provision. In *Gebardi v. United States*, 287 U.S. 112 (1932), the Supreme Court interpreted the scope of the Mann Act, which outlawed the transportation of a woman across state lines for "immoral purposes." The statute itself did not explicitly provide for punishing the woman who was being transported, but in *Gebardi* the woman was convicted under an aiding-or-abetting theory. The Supreme Court reversed her conviction, stating that:

> It is not to be supposed that the consent of an unmarried person to adultery with a married person, where the latter alone is guilty of the substantive offense, would render the former an abettor or a conspirator, or that the acquiescence of a woman under the age of consent would make her a co-conspirator with the man to commit statutory rape upon herself. The principle, determinative of this case, is the same.

*Id.* at 123 (internal citations omitted). Similarly, in *United States v. Amen*, 831 F.2d 373, 381-82 (2d Cir. 1987), the Second Circuit held that a statute that applied to so-called "kingpins" did not contemplate the extension of aiding-or-abetting liability to accessories: to apply accessory liability to the kingpin statute would defeat the purpose of treating kingpins more harshly than their subordinates. The same holds true in our case. Congress treated customers more harshly than licensed dealers; to treat licensed dealers as accessories to the customers undermines Congress's intent.

The majority's interpretation of § 922(b)(5) not only suffers from the same problems as its interpretation of § 924, but also is at odds with our decision in *United States v. Choice*, 201 F.3d 837 (6th Cir. 2000). The Carneys' argument is fairly straightforward: the evidence showed that they falsely filled out records, not that they failed to fill out any records at all. The Government argues, however, that the statute "is also violated when a dealer wilfully fails to record the name, age, and address of the true purchaser, instead inserting the name, age, and address of a straw purchaser."

Again, the Government's reading would subject virtually all licensed dealers who file false records to dual liability, rendering § 922(b)(5) duplicative. And in *Choice*, 201 F.3d at 840, when rejecting a challenge to a conviction under the felony provision of § 922(b)(5), with the dealer arguing that § 924(a) subjected him only to misdemeanor liability, we drew an explicit distinction between submitting false records and keeping no records, noting that Congress "punish[ed] licensed dealers who knowingly falsify records less harshly than dealers who willfully fail to keep any records at all." *Id.* at 840. This language in *Choice* was not, as the majority contends, "mere noncontrolling dictum." (Majority at **) Rather, if the Government's reading of the statute were correct—that the falsification of records inevitably also resulted in distinct liability for the attendant failure to record the true information—then the basis for our holding in *Choice* would be undermined.

In both of its holdings, the majority has embraced statutory interpretations that assume that Congress not only created multiple liability for the same conduct in virtually all cases, but also that it did so in an indirect fashion when a more direct means was available to it. I would give the statutes their natural reading, which leads to the inevitable conclusion that Congress wanted federally licensed dealers who falsified

paperwork to be charged only as federally licensed dealers who falsified paperwork.  I therefore would reverse the convictions.

For the preceding reasons, I respectfully dissent.